**Sheila CONKLE, Plaintiff–Appellant,**

v.

**Sulinna JEONG, d/b/a Laird's Food Market; Baldwin Jeong; Local 1179, United Food and Commercial Workers International, et al., Defendants–Appellees.**

No. 94–16012.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1995.

Decided Dec. 27, 1995.

William J. Hooy, Hooy & Hooy, Concord, California, for plaintiff-appellant.

Michael T. Anderson, Davis, Cowell & Bowe, San Francisco, California; Moris Davidovitz and Kathleen Friedlander, Davidovitz & Yaron, San Francisco, California, for defendants-appellees.

Before: CHOY, WIGGINS, and LEAVY, Circuit Judges.

CHOY, Circuit Judge:

Appellant Sheila Conkle ("Conkle") appeals the summary judgment for defendants in her action against her former employers and union for breach of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for slander, and for intentional interference with prospective economic advantage. We affirm.

I. Factual and Procedural Background

Conkle began working at Laird's Market ("Laird's") on September 30, 1976, and subsequently joined United Food and Commercial Workers Union, Local 1179 ("Local 1179" or "the union"). Conkle worked as a "liquor clerk" until 1990, when the union pressured Laird's to reclassify her as a higher-paid "grocery clerk." Her duties involved checking groceries for customers and occasional light lifting. Conkle alleges that Laird's had an unwritten policy of allowing female employees to refuse to lift items and instead ask male employees for help.

After the reclassification, Conkle had to perform more heavy lifting, which resulted in a back injury on November 5, 1991. Conkle's family practitioner, Dr. Dana Slauson, allowed Conkle to return to work on condition that she refrain from lifting. On November 8, 1991, the last day that Conkle worked at Laird's, the owner of Laird's, Sulinna Jeong, decided that Conkle could not work.

On December 9, 1992, Conkle's worker's compensation lawyer told her that Sulinna Jeong had agreed that Conkle could return to work with a twenty-five pound weight lifting limit. Although Conkle had not yet received a doctor's medical release, she believed that she could return to work as a grocery checker with no modification of duties.

On December 18, 1992, Sandra Twohy ("Twohy"), a Local 1179 representative, told Conkle that Sulinna Jeong had "sold" Laird's to Jadelin Enterprises, Inc., a California corporation formed between her children, Baldwin and Jade Jeong, for the sole purpose of purchasing Laird's. Laird's would lay off all union employees by December 28, 1992. Local 1179 believed that the "sale" was, in effect, a repudiation of the collective bargaining agreement.

In response, Local 1179 filed a grievance under its collective bargaining agreement to prevent the termination of Laird's union employees. On March 5, 1993, Local 1179 filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging that Laird's had refused to bargain with Local 1179 and had discriminated against its union employees. Picketing began on February 16, 1993 and continued for seventeen days. On March 10, 1993, Local 1179 settled its labor dispute with one of Laird's new owners, Baldwin Jeong. He agreed to be bound by the 1992–1995 Master Food Agreement and, in return, Local 1179 waived its claims for back pay for the period of December 28, 1992 through March 10, 1993 and withdrew all pending grievances.

At the outset of the negotiations, Baldwin Jeong indicated his reluctance to rehire Conkle. Local 1179 representatives Phil Carney ("Carney") and Twohy told Baldwin Jeong that he would have to rehire Conkle, so long as she provided a full medical release. On March 11, 1993, Baldwin Jeong gave Conkle a written job description which required that she be able to lift boxes up to fifty pounds, stock shelves, and stand for two hours at a time.

On March 19, 1993, Conkle obtained a "qualified" medical release from Dr. Slauson. The release states that Conkle can perform any work "which does not require prolonged bending, stooping or squatting." Moreover, Conkle "is able to lift articles up to [twenty-five pounds] if she is not required to bend over to lift them." Furthermore, Conkle "should not stand without moving for longer than an hour in any 4 hour period."

In a March 21, 1993 letter, Conkle informed Local 1179 that Baldwin Jeong had written her that "because of [Conkle's] past and present medical conditions, [she] did not

meet the requirements of employment at his firm." Conkle requested Local 1179 to "please advise [her] of the union position on this matter A.S.A.P." In a March 24, 1993 letter to Local 1179, Conkle's attorney questioned "what, if anything, Local 1179 intend[ed] to do in response to Sheila Conkle's [sic] of 3/21/93 in response to the discriminatory practices of Laird's Food Markets."

In a March 30, 1993 letter, Local 1179's counsel responded:

> Ms. Conkle's medical certificates indicate she cannot perform the duties required of her. There is no basis to conclude that the employer's job requirements are inappropriate, unrelated to the actual duties or applied discriminatorily. Moreover, it does not appear that even with reasonable accommodation, Ms. Conkle could perform the essential duties of the job.

The letter concluded: "If there is further information which would cause the Union to re-evaluate its position, please bring it to our attention. Otherwise, the Union is not in a position to proceed further in this matter." Neither Conkle nor her attorney responded to the March 30 letter. The next time Local 1179 heard from Conkle was June 30, 1993, the date this action was filed.

Conkle's complaint includes three claims for relief: (1) a § 301 claim against Local 1179 for breach of its statutory duty of fair representation ("DFR") and against Sulinna Jeong and Jadelin Enterprises, Inc. (collectively "Employer") for termination without just cause in violation of the collective bargaining agreement; (2) slander against Baldwin Jeong and Employer; and (3) intentional interference with prospective economic advantage against Baldwin Jeong and Employer. The district court granted summary judgment to all defendants on all claims on May 2, 1994. *Conkle v. Jeong*, 853 F.Supp. 1160 (N.D.Cal.1994).

## II. Analysis

A. The district court did not abuse its discretion in denying Conkle's request to conduct further discovery before ruling on the summary judgment motions.

We review a district court's denial of a request for further discovery by a party opposing summary judgment for abuse of discretion. *International Alliance of Theatrical and Stage Employees v. Compact Video Servs., Inc.*, 50 F.3d 1464, 1466 (9th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 514, 133 L.Ed.2d 423 (1995). Conkle argues that, under Rule 56(f), the district court should have allowed her to conduct further discovery before ruling on the summary judgment motions.

Assuming that Conkle properly requested Rule 56(f) relief, the district court had discretion to deny the relief. "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir.1987). Conkle has not met this burden. She seeks evidence regarding alleged conversations between Baldwin Jeong and potential employers, but fails to put forth any facts to show that such conversations took place.

Moreover, "[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past." *California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir.1990), *cert. denied,* 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1052 (1991); *see also Qualls v. Blue Cross of California*, 22 F.3d 839, 844 (9th Cir.1994). Conkle argues that the district court's November 1993 oral order prevented her from deposing Safeway employees and Judy Cowell, but she never formally requested the court to amend this order. Indeed, Conkle's attorney drafted the stipulation closing discovery, including an exception to allow Conkle to conduct two depositions which had not been completed on time.

In addition, although Conkle's failure to formally request a Rule 56(f) continuance may not be fatal, "the absence of a formal request for a continuance is relevant to the question whether the district court abused its discretion by ruling on the motion when it did." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1534 (9th Cir.1989), *cert. denied,* 493

U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990). Given these factors, the district court did not abuse its discretion in denying Conkle's request for further discovery.

### B. Local 1179 did not violate its DFR as to Conkle.

■ We review de novo a grant of summary judgment. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). "Specifically, whether a union's conduct amounted to a breach of the duty of fair representation presents a mixed question of law and fact that we review de novo." *Burkevich v. Air Line Pilots Ass'n, Int'l*, 894 F.2d 346, 349 (9th Cir.1990).

■ Local 1179 asks us to give "considerable weight" to the NLRB's refusal to issue an unfair labor practice complaint against Local 1179, *Helmer v. Briody*, 747 F.Supp. 1020, 1026 (S.D.N.Y.1990), quoting *Berard v. General Motors Corp.*, 493 F.Supp. 1035, 1040 (D.Mass.), *aff'd*, 657 F.2d 261 (1st Cir.1980), *cert. denied*, 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981). In *Helmer* and *Berard*, however, the NLRB made express factual findings, which did not occur here. Moreover, "[t]he NLRB general counsel has unreviewable discretion to refuse to issue an unfair labor practice complaint, and plaintiffs were not afforded a hearing before the NLRB. Furthermore the courts, not the Board, have the responsibility for defining the scope of the duty of fair representation." *Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229, 1245 (8th Cir.), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). While we might give weight to express factual findings, we will not defer to a naked no-action decision.

■ Conkle alleges that Local 1179 violated its DFR in three ways. First, in her complaint she alleges that Local 1179 inadequately supported the strike and made unnecessary concessions to Laird's. Her opening brief, however, appears to abandon this argument. Even if not abandoned, the argument lacks strength. Federal law grants a union a "wide range of reasonableness" in representing its members. *Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 549 (9th Cir.1987). A union breaches its DFR only when its conduct towards a member is "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Local 1179's choice of litigation and picketing tactics, as well as its decision to cede some negotiating issues in order to retain union jobs and not pressure the financial viability of Laird's, was well within this wide range of reasonableness.

■ Second, Conkle alleges that Local 1179 connived with management to deny her reemployment by suggesting that Baldwin Jeong require a full medical release. Construing the evidence in the light most favorable to Conkle, her claim has some appeal. In his deposition, Baldwin Jeong stated that he knew nothing about a medical release before the union representatives mentioned it. His deposition also suggests that the union representatives first mentioned the medical release after the contract signing, indicating that the medical release was not a bargain necessary to save the negotiations, but rather a gratuitous concession. Indeed, Baldwin Jeong indicated his willingness to follow any union suggestion regarding Conkle: "I said, 'You're the union, tell me what I do from now on.' I listen to them, everything they say. I said, 'You know the laws, you know the stuff,' so I just follow whatever they said and that's all I did."

This conduct, however, does not meet the standard of arbitrariness the Supreme Court outlined in *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). The Court held that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Id.* at 67, 111 S.Ct. at 1130 (citation omitted). Baldwin Jeong directly asked the union representatives whether he had to rehire Conkle. While they could have told Jeong a misleading half-truth that he had to rehire her, they had several rationales for telling him about the medical release. A union representative is "entitled to decline to put forward an

interpretation of the collective bargaining agreement which he and his union reasonably [believe is] incorrect." *Early v. Eastern Transfer,* 699 F.2d 552, 557 (1st Cir.), *cert. denied,* 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983). Local 1179 reasonably believed that management could require a full medical release. In addition, a union has good reason to avoid souring relations by misleading a new manager who has just signed a new collective bargaining agreement. It was not irrational for the union representatives to answer honestly and fully Baldwin Jeong's inquiry about whether he had to rehire Conkle.

Nor did Local 1179 act in bad faith in suggesting the medical release. Conkle argues that the leaders of Local 1179 had a personal animus against Conkle over her role in the strike, and knew the extent of her injury when they suggested the medical release. While the leaders of Local 1179 may have personally disliked Conkle, however, she provides no evidence that this alleged dislike, rather than the legitimate reasons noted above, motivated their decision to mention the full medical release. Conkle herself was surprised at the restrictions imposed in Dr. Slauson's qualified medical release, indicating that no one knew the extent of her injury before the medical release.

 Third, Conkle alleges that Local 1179 failed to pursue her grievance diligently against Laird's for terminating her without "just cause" in violation of the Master Food Agreement. A union breaches its DFR if it ignores a meritorious grievance or processes it in a perfunctory manner. *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). A union's decision to pursue a grievance based on its merits or lack thereof is an exercise of its judgment. *Stevens v. Moore Business Forms, Inc.,* 18 F.3d 1443, 1447 (9th Cir.1994). A union's decision is arbitrary only if it lacks a rational basis. *Robesky v. Qantas Empire Airways Ltd.,* 573 F.2d 1082, 1089 (9th Cir.1978).

 Assuming that Conkle properly exhausted the grievance and arbitration procedures, Local 1179's rejection of her claim did not lack a rational basis. As its March 30, 1993 letter states,

Ms. Conkle's medical certificates indicate she cannot perform the duties required of her. There is no basis to conclude that the employer's job requirements are inappropriate, unrelated to the actual duties or applied discriminatorily. Moreover, it does not appear that even with reasonable accommodation, Ms. Conkle could perform the essential duties of the job.

Conkle does not dispute that Laird's physical requirements matched industry standards. Instead, she argues that the "common law of the shop" at Laird's allowed female employees to refuse any heavy lifting. Since her letters never informed Local 1179 of this policy, however, it was hardly irrational for the union to have overlooked it. Moreover, even if Local 1179 knew of the policy, it had no duty to advocate a policy which it reasonably believed would constitute sexual discrimination. *Cf. Early v. Eastern Transfer,* 699 F.2d 552, 557 (1st Cir.1983), *cert. denied,* 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983). At most Local 1179 made "an error in evaluating the merits of a grievance," for which we have never held a union liable absent proof of discrimination or bad faith. *Peterson v. Kennedy,* 771 F.2d 1244, 1254 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

Conkle thus must show discrimination or bad faith. As noted above, however, the evidence of bad faith is too weak to survive summary judgment, and Conkle nowhere alleges discrimination. Given Local 1179's strong rationale for not pursuing Conkle's claim, no reasonable trier of fact could find that Local 1179 made its decision in bad faith.

C. Because Local 1179 did not breach its DFR, Conkle cannot pursue her § 301 claim against Employer.

 Courts "should defer to the tribunal chosen by the parties finally to settle their disputes." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). "Therefore, in order to proceed with a § 301 suit against the employer, the employee must show not only that her discharge was con-

trary to the agreement, but also must demonstrate that the union breached its duty of fair representation." *Schlacter–Jones v. General Tel.*, 936 F.2d 435, 442–43 (9th Cir. 1991). Because Local 1179 did not breach its DFR, Conkle cannot pursue her § 301 claim against Employer.

### D. Conkle fails to establish a claim for slander.

We review a grant of summary judgment de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). Conkle and her husband asked their friends Deborah DePatta and Charles Cain to telephone Baldwin Jeong and ask to "verify Conkle's employment." Conkle alleges that Jeong's statements to these callers constitute slander. Cal.Civ.Code § 46.

■ Truth is a complete defense to slander, "regardless of the bad faith or malicious purpose of the publisher of the material." *Swaffield v. Universal Ecsco Corp.*, 271 Cal. App.2d 147, 76 Cal.Rptr. 680, 690 (1969). Conkle alleges that Baldwin Jeong made statements to the effect:

(a) that while [Conkle] worked at the market she acted like she thought she was management, knew everything and was difficult as an employee; (b) that [Conkle] led a strike against the market, but· her own Union turned against her because she was too radical; (c) that there were many customer complaints about [Conkle], some saying they would rather stand in another cashier's line for 2 hours, rather than be waited on by [her]; (d) [sic] and that [Conkle] is more trouble than she is worth.

Most of these statements are indisputably true. Conkle was never a management employee, yet she stated that she performed management duties and acted accordingly. Conkle led the strike against Laird's, and has stated that her union turned against her because she advocated a harder line against Laird's. Laird's received customer complaints about Conkle, including one by a customer who "found Sheila Conkle to be so unpleasant that when [he] went into the store, [he] would go to another checkstand to avoid her." These true statements are not actionable.

■ The other statements are not actionable because they are statements of opinion. An actionable statement must imply a provably false factual assertion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20, 110 S.Ct. 2695, 2706–2707, 111 L.Ed.2d 1 (1990). For example, a statement that a certain teacher is "the worst teacher at FHS" is not actionable because it cannot be proven true or false. *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal.App.3d 720, 275 Cal.Rptr. 494, 497 (1990). Likewise, the statements that Conkle was "difficult as an employee" and "more trouble than she [was] worth" are statements of opinion; they do not imply a provably false factual assertion.

■ Jeong also enjoys a qualified privilege as a former employer. "It is well established that a former employer may properly respond to an inquiry from a potential employer concerning an individual's fitness for employment, and if it is not done maliciously such response is privileged." *Neal v. Gatlin*, 35 Cal.App.3d 871, 111 Cal. Rptr. 117, 121 (1973); Cal.Civ.Code § 47(c). Although DePatta and Cain were not prospective employers, they implied to Jeong that they were, and did so under the instigation of Conkle and her husband. Jeong reasonably believed he was speaking to prospective employers, and should not lose his privilege through Conkle's subterfuge. Conkle must thus establish Jeong's malice. At worst, Jeong responded candidly to direct questions. The callers made the most derogatory statements ("She's a real trouble maker, huh?" and "She sounds like she's more trouble than she's worth"), to which Jeong merely assented. Moreover, Jeong volunteered positive information ("Well, she won't steal or anything like that"), and refrained from providing other negative information, namely that her injuries prevented her from clerking. The record simply does not reveal the malice needed to overcome Jeong's qualified privilege. The district court properly granted summary judgment.[1]

---

1. Consent also constitutes an absolute privilege to the publication of defamatory matter. *Royer*

*v. Steinberg*, 90 Cal.App.3d 490, 153 Cal.Rptr. 499, 503 (1979). "Where a defendant, not in the

918

E. Conkle fails to establish a claim for intentional interference with prospective economic advantage.

 We review a grant of summary judgment de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). Conkle claims that Baldwin Jeong uttered statements to prospective employers intending to prevent her from obtaining employment. The elements of the tort of intentional interference with prospective economic advantage are:

(1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant.

*Blank v. Kirwan,* 39 Cal.3d 311, 216 Cal. Rptr. 718, 723, 703 P.2d 58, 70 (1985).

Conkle fails to satisfy these elements. She provided no evidence of an expected job at Safeway or elsewhere, or of any conversation between Jeong and any prospective employer. Safeway's decision not to hire Conkle, even viewed in the light most favorable to her, does not suffice to show that Jeong spoke to Safeway, much less made disparaging comments about her.

The judgment of the district court is AFFIRMED.

presence or hearing of third persons, makes a slanderous statement about a plaintiff, and thereafter, at the request of the plaintiff, repeats the statement in the presence and hearing of third persons, such repetition cannot be made the basis of an action for slander." *Pouchan v. Godeau,* 167 Cal. 692, 140 P. 952, 953 (1914). In *Royer,* a superintendent wrote an "open letter" to the community which "challenged" a school board to "prove" charges of improper election activities. *Royer v. Steinberg,* 153 Cal.Rptr. at 502. The court held that Royer had consented to the board's subsequent publication of its charges.

*Id.* at 503–04. This principle applies to cases such as Conkle's, "where a statement made privately to the plaintiff is published solely through the actions and effort of the plaintiff himself." *Id.* at 503. Conkle arranged and intended for Jeong to provide information to DePatta and Cain; she consented to the publication just as much as if she had directly told Jeong to speak to them. She cannot now object to a publication which she manufactured. Jeong's statements are thus absolutely privileged, even if made with malice.