**Raymond Vincent NIDDS,**
**Plaintiff–Appellant,**

v.

**SCHINDLER ELEVATOR**
**CORPORATION, Defendant–Appellee.**

No. 95–15090.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 15, 1996.

Decided Dec. 24, 1996.

Amended April 30, 1997.

Kendra L. Tanacea, San Francisco, California, William C. Quackenbush, Quackenbush & Quackenbush, San Mateo, California, for plaintiff-appellant.

Rebecca Hull, Cynthia H. Plevin, Sedgwick, Detert, Moran & Arnold, San Francisco, California, for defendant-appellee.

## ORDER AMENDING OPINION AND DENYING PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC AND AMENDED OPINION.

### ORDER

The opinion filed in this case on December 24, 1996, (slip op. 16047), 103 F.3d 854, is hereby amended as attached.

With this amendment, a majority of the panel voted to deny appellant's petition for rehearing. Judge Thompson voted to reject the suggestion for rehearing en banc and Judge Sneed so recommended. Judge Noonan voted to grant the petition for rehearing and to accept the suggestion for rehearing en banc.

The full court has been advised of the suggestion for en banc rehearing, and no judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.

The petition for rehearing is denied, and the suggestion for rehearing en banc is rejected.

Before: SNEED, NOONAN, and THOMPSON, Circuit Judges.

## OPINION

SNEED, Circuit Judge:

Raymond Vincent Nidds appeals the grant of summary judgment in favor of his former employer, Schindler Elevator Corp. ("Schindler"), on his California Fair Employment and Housing Act ("FEHA") discrimination and retaliation claims. Federal jurisdiction is based on the parties' diversity of citizenship. Nidds also contests the district court's refusal to continue discovery before ruling on Schindler's summary judgment motion. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

### BACKGROUND OF THE DISPUTE

Nidds was a highly experienced, 54–year–old elevator service mechanic when he was hired by Schindler on June 13, 1988, and assigned to a downtown San Francisco service route. He was well-liked by his customers and his employer. Sometime in 1989 or 1990, Schindler's District Service Supervisor, Darrel Graham, allegedly told another service mechanic that he intended to get rid of all the "old timers" because they would not "kiss my ass." On October 5, 1990, Nidds and two other service mechanics were laid off. Graham wrote a favorable letter of recommendation for Nidds, and assured him that he would be considered for reemployment should business pick up. Shortly thereafter, his route was assigned at least in substantial part to 25–year–old Greg Cardenas, a former "helper" (an apprentice) employed by Schindler since 1985, who had passed his mechanic's test only 30 days earlier.

When Nidds learned that his route had been assumed by Cardenas, he filed an age discrimination complaint with the California Department of Fair Employment and Housing ("DFEH") on December 7, 1990. The investigation by DFEH revealed that Schindler laid off a total of eleven employees during 1990 due to a purported downturn in business. Sixty-four percent of those employees were over 40 years old. Asked how it selected employees for layoff, Schindler initially responded that seniority was the ba-

sis, and later, that it looked at a combination of factors, including seniority, job performance, special expertise, and competence. Schindler explained that Nidds was overall a very good employee but that he was less proficient on the modern "Solid State" equipment than other mechanics. As to Nidds' claim that there was no downturn in work in the company's service arm, Schindler explained that the downturn was in the construction arm, and that its practice was to shift its best employees from construction to service to avoid losing them to competitors, and to lay off employees from service to compensate. In November 1991, the DFEH informed Nidds that it would not pursue his claim.

Earlier Schindler had made two offers to rehire Nidds, the first for a route in Fresno, the second for an Oakland route; Nidds rejected the first but accepted the latter in January 1991. Schindler soon began receiving complaints from the manager of 1800 Harrison, a building that accounted for 60% of the revenues on the Oakland route. Schindler also allegedly received complaints from its troubleshooters, who said that Nidds needed their help more than did other mechanics.

In March 1992, Nidds was purportedly asked by a supervisor whether he had dropped his DFEH complaint, to which he replied that he had not. Later that month, Nidds' attorney informed Schindler of Nidds' intention to sue the company for age discrimination. In April 1992, Schindler removed Nidds from the Oakland route and assigned him to the restoration department. Although his compensation was unaffected, Nidds characterizes this transfer as a demotion. In response, Nidds filed a second complaint, charging age discrimination and retaliation, with the DFEH on June 10, 1992.

Schindler transferred Nidds again in June 1992, from the restoration department to a service route that included the Geneva Towers, an allegedly high-crime housing complex in San Francisco. On June 26, Nidds left Geneva Towers in the middle of the day after learning of riots at nearby Woodrow Wilson High School. Although he returned later in the afternoon to repair two malfunctioning

elevators, his behavior annoyed Geneva Towers' management. A subsequent cascade of meetings and correspondence between Geneva Towers and Schindler resulted in a decision to remove Nidds from the route. Nidds, who went on vacation from July 2 to July 22, learned of this decision on his return. Shortly thereafter, on July 28, he was laid off for the second and final time.

Nidds filed his employment discrimination and retaliation complaint in California Superior Court on May 5, 1992. In June, Schindler removed the action to federal court based on the parties' diversity of citizenship. Following extensive discovery by Nidds' attorney and several discovery disputes during 1992 and 1993, the magistrate set a discovery cutoff date of November 1, 1993. On July 23, however, Schindler proceeded to move for summary judgment. Nidds requested a continuance so that he could depose several of Schindler's declarants and obtain additional documents. The district court denied the continuance in August, but deferred ruling on the summary judgment motion to allow Nidds to take three more depositions and to allow time for supplemental briefing. The depositions were never taken, and on November 17, 1994, the district court granted Schindler's motion for summary judgment on all of Nidds' claims. Nidds timely appealed.

## II.

### THE AGE DISCRIMINATION CLAIM

We review the district court's grant of summary judgment on both the age discrimination and retaliation claims de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We must decide whether there is a *"genuine* issue as to any *material* fact." Fed.R.Civ.P. 56(c) (emphasis added). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's motion for summary judgment. There must be sufficient evidence "that a reasonable jury could return a verdict

for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511.

"As to materiality, the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510. Nidds' age discrimination claim, which relates to his October 1990 layoff, is based on the California Fair Employment and Housing Act ("FEHA"). FEHA reads in relevant part:

> It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action.

Cal. Gov't Code § 12941. California courts interpreting FEHA often look to federal cases interpreting the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. *See Stephens v. Coldwell Banker Commercial Group, Inc.,* 199 Cal.App.3d 1394, 245 Cal. Rptr. 606, 609 (1988). Therefore, we too rely on such cases where helpful.

An age discrimination case alleging disparate treatment, such as this one, involves shifting burdens of proof as follows:

> [A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994) (quoting *Lowe v. City of Monrovia,* 775 F.2d 998, 1005 (9th Cir.1985), *as amended,* 784 F.2d 1407 (1986)); *see also Caldwell v. Paramount Unified Sch. Dist.,* 41 Cal.App.4th 189, 48 Cal.Rptr.2d 448, 453–54 (1995), *rev. denied* (1996). However, the burden of persuasion remains at all times

with the plaintiff. *Washington v. Garrett,* 10 F.3d 1421, 1432 (9th Cir.1994).

## A. *The Prima Facie Case Barrier*

"In order to show a *prima facie* case of discrimination, 'a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." ' " *Sischo–Nounejad v. Merced Community College Dist.,* 934 F.2d 1104, 1110 (9th Cir.1991) (quoting *Lowe v. City of Monrovia,* 775 F.2d at 1005, quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). That evidence may be either direct or circumstantial, and very little is required. *Messick v. Horizon Indus. Inc.,* 62 F.3d 1227, 1229 (9th Cir.1995); *Caldwell,* 48 Cal.Rptr.2d at 454.

 To establish a prima facie case of age discrimination through circumstantial evidence, the plaintiff must show that he was:

 (1) a member of a protected class [age 40–70];

 (2) performing his job in a satisfactory manner;

 (3) discharged; and

 (4) replaced by a substantially younger employee with equal or inferior qualifications.

*Wallis,* 26 F.3d at 891 (quoting *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1421 (9th Cir. 1990)).

 The fourth element, however, has been treated with some flexibility: "We have held that the failure to prove replacement by a younger employee is 'not necessarily fatal' to an age discrimination claim where the discharge results from a general reduction in the work force due to business conditions." *Rose,* 902 F.2d at 1421; *see also Ewing v. Gill Indus., Inc.,* 3 Cal.App.4th 601, 4 Cal. Rptr.2d 640, 645 (1992). Rather, courts "require instead that the plaintiff show through circumstantial, statistical, or direct evidence

that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Rose,* 902 F.2d at 1421. This inference "can be established by showing the employer had a continuing need for his skills and services in that his various duties were still being performed," *Wallis,* 26 F.3d at 891 (internal quotation omitted), or by showing "that others not in her protected class were treated more favorably." *Washington,* 10 F.3d at 1434.[1]

 The district court ignored the flexibility these cases require and erred in concluding that to establish a prima facie case, Nidds was required to show that he was at least as qualified as his replacement. The court also erred by counting against Nidds the fact that he was not directly replaced by the younger employee, Cardenas. Under *Rose, Wallis,* and *Washington,* it is enough that Nidds' duties were substantially transferred to Cardenas.

 In summary, Nidds has shown that he was discharged; that he was performing satisfactorily; and that his duties continued to be performed by a substantially younger individual. Nidds therefore cleared the prima facie case barrier and established "a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (internal quotation omitted).

## B. *Schindler's Burden*

However, to rebut this presumption the employer must merely articulate a legitimate, nondiscriminatory reason for the action. *Id.; Wallis,* 26 F.3d at 892. Once the employer meets this burden, the presumption of discrimination drops away. *St. Mary's,* 509 U.S. at 507, 113 S.Ct. at 2747; *Wallis,* 26 F.3d at 892.

---

**1.** *See also Caldwell,* 48 Cal.Rptr.2d at 455 (prima facie established where "(1) complainant belongs to a protected class; (2) his job performance was satisfactory; (3) he was discharged; and (4) others not in the protected class were retained in similar jobs, and/or his job was filled by an individual of comparable qualifications not in the protected class") (internal quotation omitted);

*Ewing,* 4 Cal.Rptr.2d at 645 (in a reduction in force case, a discharged employee "need not show that he was replaced by a younger, newly hired employee; it is sufficient that the discharge occur in circumstances giving rise to an inference of age discrimination") (internal quotation omitted).

■ Schindler met its burden by offering some evidence that a downturn in work required some layoffs, and that it used a combination of factors, including performance, technical qualifications, and seniority, in deciding whom to discharge. As a consequence, the burden returned to Nidds to show that Schindler's articulated reason was a pretext for discrimination.

## C. Pretext

■ To satisfy that burden, and survive summary judgment, Nidds must produce enough evidence to allow a reasonable factfinder to conclude *either:* (a) that the alleged reason for Nidds' discharge was false, *or* (b) that the true reason for his discharge was a discriminatory one. *Warren,* 58 F.3d at 443 (stating that the plaintiff "must produce evidence of facts that either show a discriminatory motive or show that the [employer's] explanation for his rejection is not credible").[2]

■ Applying the law to the facts before us, we hold that Schindler was entitled to summary judgment, because the evidence Nidds has offered is not sufficiently probative that it would allow a reasonable factfinder to conclude either that the alleged reason for his discharge was false, or that the true reason for his discharge was a discriminatory one.

Nidds presents three distinct arguments that, he says, raise sufficient factual disputes that require his case to proceed to trial. First, he argues that Schindler's explanation for the initial layoff, a downturn in business, was false. Nidds asserts that there was no downturn in business. In support of this claim, Nidds adduces some evidence that Schindler's service business was doing quite well. But this evidence does not raise a genuine issue of material fact. Schindler explained that there was a downturn in *construction* business, not *service* business, and that it responded to the downturn in its construction business by moving employees from construction to service, and then laying off service employees. Nidds has failed to adduce any evidence that calls into question the veracity of Schindler's explanation.

Second, Nidds argues that summary judgment against his claims was improper because of Schindler's shifting explanations for the October 1992 layoff. These alone, he insists, are enough to raise a genuine issue as to its discriminatory motives. He cites *Washington,* 10 F.3d at 1434 ("We note that, in the ordinary case, such fundamentally different justifications for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason"), and *Lindahl v. Air France,* 930 F.2d 1434, 1438–39 (9th Cir. 1991) (reasons for discharge not credible where they were vague, unsupported by the facts, and not articulated until the litigation commenced). However, the reasons given by Schindler are not incompatible, and therefore not properly described as "shifting reasons." "Lack of work" was the reason given for the layoffs in general, while Nidds' lack of seniority and poorer performance relative to other mechanics were the reasons given for *his* layoff specifically. Therefore, Nidds' evidence is insufficient to raise a genuine issue of fact as to whether Schindler's reasons for the layoff were pretextual.

■ Moreover, there is insufficient evidence to raise a genuine issue of fact as to whether the actual reason was a discriminatory one. Nidds cites the "old timers" comment allegedly made by Graham as evidence of a discriminatory motive. That comment, however, was very much like the comments in *Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705

---

2. At trial, Nidds must prove *"both* that the [employer's alleged] reason was false, *and* that discrimination was the real reason." *St. Mary's,* 509 U.S. at 515, 113 S.Ct. at 2752 (emphasis in original). However, if Nidds persuades the jury that the defendant's alleged reason is false, then "[t]he factfinder's disbelief of the reasons put forward by the defendant ... together with the elements of the prima facie case ... will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and ... no additional proof of discrimination is *required." Id.* at 511, 113 S.Ct. at 2749 (emphasis in original). Thus, to survive summary judgment, Nidds is not required to provide direct evidence of discriminatory intent as long as a reasonable factfinder could conclude—based on Nidds' prima facie case *and* the factfinder's disbelief of Schindler's reasons for discharge—that discrimination was the real reason for Nidds' discharge.

(9th Cir.1993), which the court held did not support an inference of discriminatory motive. In *Nesbit,* the plaintiff's immediate supervisor commented to Nesbit that "[w]e don't necessarily like grey hair." The court found that the "comment was uttered in an ambivalent manner and was not tied directly to Nesbit's termination," and upheld the grant of summary judgment in favor of the employer. *Id.*

Similarly, Graham's comment was ambiguous because it could refer as well to longtime employees or to employees who failed to follow directions as to employees over 40. Moreover, the comment was not tied directly to Nidds' layoff. Like the comment in *Nesbit,* therefore, it is weak evidence and not enough to create an inference of age discrimination.

Also distinguishable is *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1411 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996), upon which Nidds relies. There, we reversed the grant of summary judgment in favor of the employer where the employee had alleged "that on three separate occasions, when he asked to be considered for president, he was told the Board wanted somebody younger for the job" and had submitted evidence to the same effect in the form of meeting notes and an affidavit of a coworker. Nidds' evidence, by contrast, is neither as direct nor as weighty. It is not enough to support an inference of age discrimination.

### III.

### THE RETALIATION CLAIM

#### A. *Prima Facie Case*

■ In a retaliation case, the burden shifting scheme is much the same as that in an age discrimination case. *Lam v. University of Hawaii,* 40 F.3d 1551, 1559 & n. 11 (9th Cir.1994). A prima facie case requires the plaintiff to show "that he engaged in a protected activity, his employer subjected him to

adverse employment action, and there is a causal link between the protected activity and the employer's action." *Flait v. North Am. Watch Corp.,* 3 Cal.App.4th 467, 4 Cal. Rptr.2d 522, 528 (1992).

■ Nidds' complaints to the DFEH were protected activity because California law specifically prohibits employers from taking adverse actions against employees as a result of their filing a complaint alleging FEHA violations. *See* Cal. Gov't Code § 12940(f). Although we decline to view Nidds' transfer to the restoration department as an adverse employment action,[3] his ultimate termination on July 28, 1992, certainly was.

■ Moreover, Nidds has submitted sufficient evidence to create an inference of a "causal link" between Nidds' complaints and his July 1992 layoff. The layoff occurred only four months after his supervisor allegedly asked him if he had dropped his first discrimination complaint (March 1992) and only one month after he filed his second complaint (June 10, 1992). The temporal proximity of events was sufficient to satisfy the third element of the prima facie case. *See Flait,* 4 Cal.Rptr.2d at 529–30 (sufficient causal link where supervisor who terminated employee had made sexist comments to another employee and fired employee five months after a confrontation).

#### B. *The Employer's Burden*

Schindler, however, also met its burden of articulating a legitimate reason for the layoff. It was that the management of Geneva Towers requested that Nidds be removed from the route, and that Schindler had no other place for him. Thus, the deciding question again is whether Nidds has produced enough evidence from which a reasonable factfinder could conclude that Schindler's reason was a pretext for retaliatory termination. We hold

---

**3.** *See Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1465 n. 6 (9th Cir.1994) (questioning whether transfer from swing shift to day shift was "adverse" employment action where employee "was not demoted, or put in a worse job, or given any additional responsibilities"), *cert.* *denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995); *Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987) (no adverse employment action where temporary transfer did not result in loss of salary or benefits).

that again Nidds has failed to make that showing.

## C. *Pretext*

The crux of Nidds' argument is that Schindler encouraged the management of Geneva Towers to complain about Nidds so that Schindler would have a reason to terminate Nidds in retaliation for his filing his second age discrimination claim and intent to sue letter. For support, he cites the letter and testimony of Arthur Hutton, Geneva Towers' administrator, concerning an incident in which Nidds purportedly failed to respond to a service call.

In Hutton's letter to Ken Robinson of Schindler, dated July 21, 1992, he stated: "Pursuant to our conversation of today, we feel that it is in both our interest to relieve Mr. Ray Niddes [sic] from his duties at Geneva Towers Apartments. The environment seems to dictate whether he is able to perform his duties on a day-to-day basis." Hutton testified at his deposition that "I believe that I wrote that letter immediately—well, I believe that I spoke with Ken Robinson immediately after I became aware that the incident took place. Shortly after that, if my recollection serves me correctly, I proceeded to write the letter." Hutton testified further that "[Robinson] suggested that I write a letter expressing what we talked about over the phone."

Nidds argues that because he was on vacation from July 2 through July 21, this evidence shows that "another Schindler mechanic failed to respond to the Geneva Towers' service call. Then Robinson, seeking to find a pretext for Nidds' termination, asked Hutton to write a letter regarding *Nidds'* failure to service the route."

Nidds' proposed inference is not one that a reasonable factfinder could make. Hutton's own testimony indicates that he called Robinson and then wrote to him when he *became aware* of the incident, not when it actually happened. Moreover, the incident that prompted the call was clearly the June 26 incident when Nidds left Geneva Towers after hearing about a gang riot at the nearby high school: Hutton stated at deposition that "I do know that the information that I re-ceived indicated that Mr. Nidds didn't want to come out because he had heard that there had been violence, gang violence, during the course of that day." It is unlikely that the same incident recurred a month later with the same response from some other Schindler mechanic. Although the time lag between the June 26 incident and Hutton's phone call of about July 21 remains unexplained, the reasonable inference from Hutton's testimony is that he did not learn of the incident until the latter date.

Other evidence also supports Schindler's explanation that Geneva Towers was dissatisfied with Nidds' performance. Schindler employee Larry Scharfe stated in a declaration that "Mr. Gray [of Geneva Towers] expressed some concerns regarding Mr. Nidds leaving his job. He said that he and others in management at the apartment complex were not satisfied with the service or the attitude of the new service person, Mr. Nidds." Schindler employee Ken Robinson stated that "Mr. Gray said that he or someone else would set out their concerns regarding Mr. Nidds in writing and send them to Schindler." In a June 26, 1992, memo to Graham, Robinson explained that "At our June 25, 1993 meeting, Mr. Gray expressed his concern that Geneva Towers was merely a number on Mr. Nidds' route sheet. Mr. Gray told me that he was concerned that the level of service would decline now that Nidds had been assigned because Mr. Nidds did not care about Geneva Towers' problems."

In light of this evidence, neither Hutton's letter nor his testimony are sufficient to allow a reasonable factfinder to conclude that Schindler used Geneva Towers' concerns as a pretext to discharge Nidds. We therefore affirm summary judgment on this claim as well.

## IV.

### *THE RULE 56(f) MOTION*

"We review a district court's denial of a [Fed.R.Civ.P. 56(f)] request for further discovery by a party opposing summary judgment for abuse of discretion." *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995), *cert. denied*, —— U.S. ——, 117 S.Ct.

56, 136 L.Ed.2d 19 (1996). The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, *id.*, and that it would prevent summary judgment. *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir.1994). "Moreover, the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past." *Conkle,* 73 F.3d at 914 (internal quotation omitted).

▪ A problem might exist had the district court denied Nidds' motion for a continuance where Nidds had outstanding discovery requests and November, the cutoff date for discovery, was still several months away. Here, however, the court postponed ruling on the summary judgment motion for over a year to give Nidds time to take three depositions. Yet, Nidds never took the depositions. This lack of diligence precludes a finding that the district court abused its discretion. *See, e.g., Hauser v. Farrell,* 14 F.3d 1338, 1340–41 (9th Cir.1994) (denial of Rule 56(f) motion proper in light of failure to depose witness within 27 months of filing suit); *Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520, 524 (9th Cir.1989) (failure to take advantage of additional month of discovery granted by district court showed lack of diligence).

## V.

### CONCLUSION

Because Nidds' evidence of discrimination and retaliation is insufficient, we affirm the grant of summary judgment in favor of Schindler. We also hold that the district court did not abuse its discretion in denying Nidds' motion for a continuance of the summary judgment hearing.

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

We all agree that the district court erred in finding that Nidds had not made a prima facie case. He had, and the burden shifted to Schindler to produce a nonpretextual nondiscriminatory reason for his discharge. What we disagree about is whether Nidds produced enough evidence from which a reasonable juror could have inferred that Schindler's reason was pretextual and that in fact it laid him off because of his age.

Nidds had two witnesses (not one, as the court appears to assume) whose evidence was that Graham, the district superintendent, wanted to get rid of the "Old Timers." The court in its opinion suggests that Graham's comment was "ambiguous." There was not much ambiguity about it. That the Old Timers would not kowtow to Graham was connected by him to their length of service; and length of service in this industry meant being over forty. In his comment to Julia Stuart, Schindler's Assistant Field Supervisor, Graham said that he wanted to replace the Old Timers with "new blood"—another distinct reference to age. Even if I agreed with the court that the remark was ambiguous, a reasonable juror could resolve whatever ambiguity there is by an inference in Nidds' favor. We're operating under circuit law which is unequivocal in setting "a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996). The standard should not unaccountedly be lowered.

Nidds' evidence of discriminatory intent is properly taken into account with Schindler's shifting explanation of why it laid him off. Schindler said, first, that it was seniority and stuck to that in a proceeding before the DFEH; finally, when pressed, a year after the layoff Schindler said Nidds was a poor performer on the newer Solid State equipment. Yet when Schindler took Nidds back only four months later, it assigned him to a service route in Oakland which had over twice as many units of Solid State equipment as his old route, and Graham said that Nidds was "the most qualified person at that time." A reasonable jury could easily infer that Schindler was cloaking the discrimination already expressed by Graham with these made-up stories of why the company laid off this old and experienced and efficient employee whom Graham had rated as "excellent."

As to retaliation, it is Nidds' evidence that assignment to Geneva Towers was the company's not very nice and not very subtle way of dumping employees it wanted to punish; and it was the convenient prelude to pushing him out altogether. Schindler put him there shortly after Schindler had pointedly inquired about his discrimination filing before the DFEH. Within two months, Nidds was fired from this route as a result of a letter which in so many words indicates that the request of Geneva Towers to remove Nidds was coordinated with Schindler management. The opinion of the court turns somersaults trying to explain why Nidds' evidence on this point should not be believed. The opinion includes a pure speculation as to whether two incidents of gang violence in a gang-infested neighborhood could occur within a month. It's good jury reasoning. It's highly inappropriate for an appellate body or for a district court that is supposed to respect the different functions of judge and jury.

We are dealing here not with some procedural rule or even with a statutory direction. We are under compulsion of a constitutional command entitling persons to trial by jury as it existed at common law. U.S.Const. amend. VII. The time at which the common law right existed is the time when the Seventh Amendment was adopted. *Markman v. Westview Instruments, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1384, 1389, 134 L.Ed.2d 577 (1996). The test is historical. *Id.* A wealth of new scholarship indicates how sensitive to jury verdicts even a fairly high-handed but wise judge such as Lord Mansfield was at the time at the time of our Revolution. *See, e.g., Olney v. Allen,* (K.B.1783), *in* 1 *The Mansfield Manuscripts and the Growth of English Law in the Eighteenth Century* 354–55 (James Oldham, ed.1992); *Harris v. Worsley,* (K.B.1773), *in 2 id.* 1129–1130 (the jury verdict, upheld by Mansfield, was in his words: "To the astonishment of every body").

It can happen that a judge distrustful of a jury's sympathy for the hard luck of a plaintiff, or a judge conscious that he is the master of the facts and can speed up the process by killing a case early, will enter summary judgment where there are facts open to different interpretation by the jury. However benevolent the judge's motive, the judge is denying the litigants their constitutional right to trial by their peers. We should be the last to give countenance or comfort to such a departure from the basic structure of our law. Therefore, I dissent.