**Eugene John MAUREY,**
**Plaintiff–Appellant,**

v.

**UNIVERSITY OF SOUTHERN CALIFORNIA; Edward J. Blakely,**
**Defendants–Appellees.**

No. 99–56381.
D.C. No. CV–98–02900–NM (AIJ).

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2001.

Decided June 21, 2001.

Before TROTT, TASHIMA, and W. FLETCHER, Circuit Judges.

## MEMORANDUM *

Plaintiff–Appellant Eugene John Maurey ("Maurey") sued the University of Southern California ("USC") and Edward Blakely, the Dean of USC's School of Urban and Regional Planning ("Dean Blakely") (collectively referred to as "defendants"), alleging several causes of action related to his employment at USC. Maurey claims that he was fired and not rehired as the director of a federally funded program at USC because of his race and in violation of his employment contract. After various pre-trial proceedings, the district court granted summary judgment in favor of defendants. Maurey timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291 (2000). We AFFIRM.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Because the parties are familiar with the facts of this case, we recount them here only where necessary to explain our decision.

## DISCUSSION

### 1. Recusal

Maurey sought to recuse the presiding judge, Judge Manella, based on Judge Manella's affiliations with USC Law School. Pursuant to court rules, Maurey's recusal motion was referred to another district court judge, Judge King, for decision. Judge King refused to recuse Judge Manella.

■ We review for an abuse of discretion Judge King's refusal to recuse Judge Manella. *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1076 (9th Cir. 1998). As discussed below, Judge King did not abuse his discretion.

■ Judge King correctly determined that the facts that Judge Manella (1) is an alumna of USC Law School, (2) donated small yearly contributions to the law school, (3) participated in a law school fundraiser by donating her presence at an auctioned-off meal,[1] and (4) served as a guest judge at USC Law School's moot court competition, amount to no more than ordinary involvement of an alumna with her alma mater and do not call into question her impartiality. *See Hochman*, 145 F.3d at 1076 (finding similar affiliations to be "minimal alumni contacts" that did not

call into question the judge's impartiality); *see also Lunde v. Helms*, 29 F.3d 367, 370 (8th Cir.1994) (same).

Judge King noted that Judge Manella's membership on USC Law School's Board of Councilors was more than ordinary alumni contact with her alma mater. However, by itself, the existence of such a relationship does not show that Judge Manella has a financial interest in or is a fiduciary of USC. *See* 28 U.S.C. § 455(b)(4). As Judge King correctly observed, Maurey makes no "allegations that Judge Manella's role on the Board of Councilors entangled her with any USC, or even Law School, financial interests that are related to this suit."

■ Judge King did not abuse his discretion in refusing to recuse Judge Manella from presiding over Maurey's case against USC and Dean Blakely.[2]

### 2. Maurey's Request to Reopen Discovery

■ After discovery was closed and after the defendants had filed their motions for summary judgment, Maurey's attorney asked the district court to reopen discovery so that he could depose certain witnesses. The district court rejected the request, finding that Maurey's attorney had not been diligent in pursuing discovery. We review for an abuse of discretion the district court's refusal to reopen discovery before ruling on summary judg-

---

1. We note that when Judge Manella participated in the USC Law School fundraiser, she was not a federal district court judge. Rather, she was the United States Attorney for the Central District of California. Accordingly, we are not asked to opine on whether *judicial* participation in such fundraising efforts is consistent with the Code of Conduct for United States Judges.

2. We reject also Maurey's claim that he was denied due process because Judge King is himself an alumnus of USC Law School. First, Maurey identifies nothing about Judge King's relationship with USC Law School that amounts to more than ordinary alumnus involvement with his alma mater. *See Hochman*, 145 F.3d at 1076. Second, the fact that Maurey's recusal motion was referred to an independent judge supports our conclusion that Maurey was afforded due process.

ment. *Conkle v. Jeong,* 73 F.3d 909, 914 (9th Cir.1995).

■ Maurey bears the burden of showing the necessity for more time and why the previously allotted time was insufficient. *See id.* "We will only find that the district court abused its discretion if the movant diligently pursued its *previous* discovery opportunities, and if the movant can show how allowing *additional* discovery would have precluded summary judgment." *Byrd v. Guess,* 137 F.3d 1126, 1135 (9th Cir.1998) (citation omitted).

■ Judge Manella's finding that Maurey's attorney was not diligent in conducting discovery is amply supported by the record. Among other things, Judge Manella already extended the discovery deadline once from January 31 to February 22, 1999. Despite this extension, and despite several offers from defense counsel, Maurey's attorney failed to depose within the extended deadline the witnesses he now deems critical.

3. Evidentiary Rulings During Summary Judgment

■ In ruling on defendants' summary judgment motions, the district court (a) considered the declaration of EDA official Leonard Smith, and (b) refused to consider the recanted declaration of Thomas McClure, the head of the critical peer review team. We review for an abuse of discretion these types of evidentiary rulings. *See Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1227 (9th Cir.1998).

a. Leonard Smith's Declaration

■ According to Maurey, Leonard Smith's declaration was unlawful and inadmissible because EDA regulations prevent EDA officials, like Smith, from giving testimony absent the express consent of the EDA General Counsel. We disagree. Even if Smith violated EDA internal regulations by providing a declaration without the consent of the EDA General Counsel or other authorized official, *see* 15 C.F.R. § 15.13, his declaration is not inadmissible. In fact, the regulations clearly state:

> If an employee is unaware of the regulations in this subpart and provides expert or opinion testimony regarding official DOC information, subjects or activities without the aforementioned consultation, the witness shall, as soon after testifying as possible, inform the General Counsel ... that such testimony was given and provide a written summary of the expert or opinion testimony provided.

15 C.F.R. § 15.16. Accordingly, the "remedy" for Smith's alleged failure to obtain the consent of the EDA General Counsel is for Smith to inform the EDA General Counsel that he gave a declaration and provide a summary of that declaration. *See id.* The declaration need not be stricken. *See id.*

b. Thomas McClure's Declaration

■ Maurey next claims that the district court should have considered Thomas McClure's declaration, even though it had been sent by mistake, because "[a]t worst, Mr. McClure's request to withdraw his declaration created a triable issue as to what his testimony—and hence the true facts of this case—really are." Without belaboring the point, it is clear that well before the summary judgment hearing, McClure made it abundantly lucid to everyone involved, including Maurey's counsel, that his secretary faxed the declaration by mistake. A court need not consider such a declaration. *See United States v. Holst,* 897 F.Supp. 474, 475 (D.Or.1995) (noting that witness "has withdrawn that declaration and [the court] need not address it further").

4. Summary Judgment Decisions

The district court granted summary judgment in favor of defendants on Maurey's reverse race discrimination and breach of contract claims. We review de novo the district court's grants of summary judgment. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996). The test is whether, viewing the evidence in the light most favorable to the non-moving party (Maurey), there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

a. Race Discrimination Claim

In race discrimination cases, the Supreme Court has developed a three-part test for courts to apply: (1) the plaintiff must first prove a prima facie case of race discrimination; (2) if the plaintiff meets this burden, the burden of production shifts to the defendants to offer a legitimate, nondiscriminatory reason for their actions; (3) the plaintiff must then produce evidence which raises a genuine factual issue as to whether defendant's reasons are merely a pretext for racial discrimination. If plaintiff's evidence is lacking, summary judgment is proper for defendant. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Nidds,* 113 F.3d at 916–18.

■ Assuming *arguendo* that Maurey demonstrated a prima facie case of discrimination, which is questionable, we agree with Judge Manella that defendants offered a legitimate, nondiscriminatory reason for firing and not rehiring Maurey as the director of the University Center— Maurey's poor performance. Contrary to Maurey's characterization, the Peer Review Report was critical of Maurey and his director capabilities. The report initially describes the Center as "a one-man pro-gram" with Maurey being that man, and then maligns the Center for its lack of a "strategic plan," its "fractious approach to community and economic development," and its failure to "understand [the] purpose of [the] EDA University Center Program." Further, Leonard Smith of the EDA instructed Dean Blakely to put together a "fresh team" for the new Center because the old Center's performance, under Maurey's directorship, had not been up to par. The critical peer review report and Smith's instructions provided to defendants a legitimate, non-discriminatory reason for not rehiring Maurey as the director of the Center.

■ Maurey responds that Dean Blakely's alleged history of anti-white animus shows that defendants' non-discriminatory reason is merely pretextual. Among other things, Maurey claims that Dean Blakely described Maurey to another USC official, Dean David Shawaker, as having "two strikes against him in economic development. First, he isn't black or Hispanic. Second, he lacks demonstrated credentials." However, Dean Shawaker testified that "Dean Blakely was making a dispassionate observation about the community, which still harbors some racial bias, rather than expressing a racist bias in himself." Similarly, Dean Blakely declared that his comment to Dean Shawaker only reflected complaints he had received from the community about Maurey. Maurey offered no evidence to rebut the contextual gloss provided by Deans Blakely and Shawaker, and thus he failed to raise a *genuine* issue of material fact regarding pretext. *See Nidds,* 113 F.3d at 916–18.

Furthermore, Maurey's allegations in no way impugn the credibility of the peer review report itself. Judge Manella summed it up best:

The Peer Review Report was conducted by competent professionals who were affiliated neither with Blakely nor with USC. Maurey produces no evidence showing the defendants "cooked up" the report in order to fire him. In fact, Maurey does not attack the credibility of the report at all, and presents no evidence from which a reasonable factfinder could conclude that the true reason Maurey was not rehired was anti-white animus.

In sum, Maurey's allegations of racial bias, wholly without evidentiary support, are insufficient to show pretext, and thus do not defeat the defendants' summary judgment motion. *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890–91 (9th Cir. 1994).

### b. Breach of Contract Claim

Maurey admits that he signed an at-will employment agreement with USC in 1992. However, he argues that USC administrators made several comments that led him to believe he could only be fired for cause.

■ California case law forecloses Maurey's argument. The California Supreme Court recently noted that "most cases applying California law ... have held that an at-will provision in an *express written agreement,* signed by the employee, *cannot* be overcome by proof of an implied contrary understanding." *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089, 1103 (2000). Maurey's assertion that USC officials intimated that he could be fired only for cause cannot create an implied contract in the face of the written, signed at-will employment contract. *See id.; see also Starzynski v. Capital Pub. Radio,* 88 Cal. App.4th 33, 105 Cal.Rptr.2d 525, 529 (2001) ("[P]laintiff's assertion that his supervisor gave him oral assurances of continued employment cannot create an im-

plied contract in the face of the written acknowledgment signed by plaintiff that his employment was at-will."). Given Maurey's failure to show actionable discrimination, his at-will employment agreement ends our inquiry.

### 5. Dismissal on the Pleadings

■ Maurey's sixth claim for relief, entitled "Breach of Contract," alleged that USC breached its employment contract with Maurey by firing him without good cause. Maurey's seventh claim for relief, entitled "Breach of Covenant of Good Faith and Fair Dealing," alleged that the employment contract between Maurey and USC contained an implied covenant of good faith and fair dealing, which USC breached when it fired Maurey. The district court dismissed on the pleadings Maurey's seventh claim because it was duplicative of the sixth.

■ We review de novo the district court's decision to dismiss Maurey's seventh cause of action, *see Farjardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir.1999), and in doing so, we look to California cases for guidance in determining whether Maurey's two state law claims are duplicative.

Maurey argues that his claim for breach of the implied covenant of good faith is distinct from his claim for breach of contract because "[a]n employee whose express contract claims are barred by the 'at-will' doctrine may still have a bad faith claim." The California Supreme Court has clearly rejected Maurey's argument, stating:

[I]nsofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous. This is because ... the remedy for

breach of an employment agreement, including the covenant of good faith and fair dealing implied by the law therein is *solely contractual.* In the employment context, an implied covenant theory affords no separate *measure of recovery* such as tort damages. Allegations that the breach was wrongful, in bad faith, arbitrary, and unfair are unavailing; there is not tort of "bad faith breach" of an employment contract.

*Guz,* 100 Cal.Rptr.2d 352, 8 P.3d at 1112 (citations omitted).

Thus, the district properly dismissed on the pleadings Maurey's claim for breach of the implied covenant of good faith and fair dealing.

AFFIRMED.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.