**Ed SKOU, Plaintiff,**

v.

**PACIFIC INTERNATIONAL PIPE ENTERPRISES, INC., Defendant.**

No.   Civ.   97–477–FR.

United States District Court, D. Oregon.

March 3, 1998.

Tom Steenson, Steenson, Schumann, Tewksbury, Later & Rose, P.C., Portland, OR, for Plaintiff.

Gordon L. Osaka, Kathryn A. Short, Williams, Zografos & Peck, Portland, OR, for Defendant.

## OPINION

FRYE, District Judge.

In this action, the plaintiff, Ed Skou, alleges that his former employer, the defendant, Pacific International Pipe Enterprises, Inc. (Pacific), terminated his employment because of his age. Skou alleges claims under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and the employment discrimination laws of the State of Oregon, ORS Ch. 659. Before the court is the defendant's motion for summary judgment (# 16), the plaintiff's motion to strike and objections to evidence (# 34), the defendant's motion to strike plaintiff's corrected concise statement of facts (# 49); and the plaintiff's second motion to strike and objections to evidence (# 55).

## UNDISPUTED FACTS

The plaintiff, Ed Skou, worked for Pacific for 31 years, beginning as a laborer. Pacific originally used an autocratic style of management, but changed to a team management concept in 1989. Skou characterizes the autocratic style of management as a dictatorship with a single person making decisions. Skou characterizes the team management concept as a group of people making decisions. Skou admits resisting the change at first.

In 1994, Mike Canton became the general manager of Pacific's plants in Portland, Oregon and in Salem, Oregon. In 1995, Canton promoted Skou to the position of superintendent of Pacific's plant in Portland, Oregon. Lloyd Babler, Jr. was the president of Pacific until January 16, 1997, when he promoted Canton to the position of president. Babler is Canton's father-in-law.

In 1995 and 1996, Skou's written performance reviews were generally positive, but both include several priority projects for the upcoming year, including continuing to improve team building. The 1995 performance review includes as a priority for Skou to attend a leadership class. The 1996 performance review includes as a priority for Skou's team leaders to attend a leadership class.

Canton, believing that Skou was responsible for the high rate of turnover at the Portland plant; that Skou was not a team player; that Skou called employees degrading names; that Skou was responsible for an unusually high amount of rejected material; and that Skou arbitrarily enforced drug, alcohol and absenteeism policies, terminated Skou for these reasons. Skou generally denied the truth of Canton's beliefs.

On December 2, 1996, Canton met privately with Skou and terminated his employment. Skou was at that time 57 years old. Canton told Skou that his termination was a continuation of the "downsizing" taking place at Pacific. Canton uses the term "downsizing" to mean either a reduction in force or a restructuring or consolidating of a position. Canton had informed Babler a few days before he terminated Skou that he had decided to terminate Skou. Canton states that the decision to terminate Skou was his own decision. Skou was replaced by Dave McIntire, age 39. Within a month, part of the responsibilities that had been performed by Skou were moved from McIntire to Terry Fields, age 53, and to Canton, age 43.

Skou has never heard Canton make an age-related remark. Babler asked Skou his age two or three times, and asked John Collopy his age once when Skou was listening. Babler also asked employees how long they planned to work at Pacific. Skou characterizes these questions as idle conversation. Babler referred to Skou and some other employees as "old timers." Defendant's Statement of Facts, Exhibit 1, Skou Deposition at 99. Skou felt that Babler used the term to refer to people who had worked for the company for 30 years or more, rather than in relation to their age. Skou has also used the term "old timer" in the same way.

Barry Edwards, former chief financial officer of Pacific, states that Babler referred to employees older than 50 years of age who were at the time in his disfavor as "old dogs." He never heard Babler describe a similarly disfavored younger employee with a comparable term.

Babler terminated Jim Landis, the general manager of the Tacoma plant, on January 16, 1997. Landis states that Babler told him during that conversation that "it was time to let the younger kids have a try at running the Tacoma operation and in turning that operation around." Defendant's Statement of Facts, Exhibit 3, Landis Deposition at 10. Babler denies making the statement.

On the day that Skou was terminated, Loren Mehlbrech, a team leader, told Skou "something to the effect that when you're over 50 your days are numbered." Skou Deposition at 96. Skou made a similar comment to Canton. Larry Miller, production superintendent of Pacific's Salem plant, admits making the statement in a joking manner.

During the last several years, eleven other employees over the age of 40 were terminated. Canton terminated John Collopy, age 62, and did not replace him. After Canton had terminated Collopy, Canton asked Babler if he agreed with the termination. Babler said that he did. Canton states that he took no part in the decisions to terminate the other ten employees. Babler terminated six of the ten employees. Of the ten, three were not replaced, one was rehired, three were replaced by employees older than the terminated employees who were replaced, and three were replaced by employees younger than the terminated employees who were replaced.

## CONTENTIONS OF THE PARTIES

Pacific contends that Skou was terminated for non-discriminatory, legitimate business reasons, namely, his dictatorial management style which did not mesh with the company's current team management concept, leading to performance problems in Skou's group. Pacific contends that any negative remarks relating to age are irrelevant to Skou's discharge because they are "stray" remarks and were not made by Canton, the person who decided to terminate Skou. Pacific further contends that evidence of other terminations are not proof of a pattern and practice of age discrimination because the size of the sample group is too small and because most of the terminations were not made by the person who terminated Skou.

Skou contends that Pacific's stated reason for his termination is pretextual; that the remarks made by Babler are evidence of the discriminatory motive behind the termination of Skou because Babler terminated other older employees at Pacific; and that Babler had a close relationship, and thus some type of control, over Canton. Skou further contends that the terminations of other management-level employees over the age of fifty is evidence of Pacific's discriminatory intent.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

## ANALYSIS AND RULING

### 1. *Evidentiary Motions*

The parties have filed motions to strike or have objected to a total of forty-seven different statements contained in each others' concise statements of fact. The court will use the concise statements of facts to assist it in ordering the raw evidence, but it always checks the supporting evidence cited and disregards speculation, overstatements and conclusions proffered by a party as a "fact." The court declines to rule individually on the motions to strike, but will keep them in mind when reviewing the evidence filed.

### 2. *ADEA Claim*

To prove a Title VII disparate treatment claim, a plaintiff must establish a *prima facie* case of discrimination. A *prima facie* case may be demonstrated by direct evidence of discriminatory intent or may be based on a presumption arising from factors set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). Generally stated, the factors are: (1) membership in a protected class; (2) qualification for the job or satisfactory performance of the job; (3) an adverse employment decision; and (4) treatment different from those similarly situated outside of the protected class. *McDonnell Douglas,* 411 U.S. at 802.

The degree of proof necessary to establish a *prima facie* case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis,* 26 F.3d at 889. "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.' ... 'Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Id.* (citations omitted). Once plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating some permissible reason for the adverse action. *Id.* "Once the defendant fulfills this burden of production by offering a legitimate, nondiscriminatory reason for its employment decision, the ... presumption of unlawful discrimination 'simply drops out of the picture.'" *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Here, Pacific concedes for purposes of this motion that Skou can prove a *prima facie* case. Pacific has articulated a legitimate, nondiscriminatory reason for Skou's termination by its reference to Canton's belief that Skou's performance and management style were inadequate and Canton's statement that he made the termination decision based on those beliefs.

The burden then shifts to Skou to show that Pacific's reason is a pretext for another motive which is discriminatory. *Id.* Skou must produce "specific, substantial evidence of pretext" in response to Pacific's evidence of nondiscriminatory reasons. *Id.* at 890 (citation omitted). "[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption." *Id.* at 890–91.

Under federal standards, to avoid summary judgment, the plaintiff "must produce enough evidence to allow a reasonable factfinder to conclude *either:* (a) that the alleged reason for [the plaintiff's] discharge was false, *or* (b) that the true reason for his

discharge was a discriminatory one."[1] *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir.1996) (emphasis in the original), *cert. denied*, —— U.S. ——, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997).

There is not enough evidence to allow a reasonable factfinder to conclude that the reasons given by Canton for Skou's discharge are false. There is no evidence that Canton did not believe his stated reasons. There is evidence that team building was discussed as an area to improve in Skou's last two performance reviews. There is evidence that Canton spoke to Skou about the amount of waste material at his plant. There is no evidence on the turnover rate at all, whether it is high or low. There is evidence that Skou's responsibilities were split among three other employees, which could be described as a downsizing. There is conflicting evidence as to whether Skou used degrading names when speaking to employees or whether he improperly enforced drug, alcohol, and attendance policies, but viewed in light of the other reasons given for the termination, it is insufficient for a fact finder to conclude that the stated reasons were false.

Skou contends that Pacific changed its stated reason for his termination after this action was filed. "Fundamentally different justifications" for the employer's adverse action raise a genuine issue of material fact as to whether the stated reasons are pretextual because multiple reasons suggest the possibility that none of the official reasons are true. *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir.1997). Here, Canton told Skou that his position was being downsized. Canton used the word "downsized" to also mean restructured. Skou's responsibilities were spread among three Pacific employees within a month; a replacement was not hired. This could be described as a downsizing or a restructuring. Ten days after the termination, Canton told Skou in a letter that although his management style worked in the past, it would not work in the future. Pacific's current statement that performance and management style were also reasons for the

termination is not a "fundamentally different justification" from the earlier reasons. Rather, it is an explanation for restructuring Skou's position. The reasons are not contradictory and can coexist.

Canton promoted Skou in 1995 and terminated him on December 2, 1996. When the same person is responsible for both hiring and firing a plaintiff who claims discrimination, and both actions occur within a short period of time, "a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270–71 (9th Cir.1996). This analysis is helpful when the same person promotes and then fires a plaintiff who claims discrimination within a short period of time. Two years passed between Canton's decisions. It is nonsensical to believe that Canton developed an aversion to older employees within that time period, or that Skou aged enough to trigger a discriminatory motive on Canton's part.

Skou relies on *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996), in support of his contention that Pacific's reasons for the termination are pretextual. In *Schnidrig*, however, several people on the board of directors told the plaintiff that the board of directors was only considering people less than fifty for the job of president, which was the position that the plaintiff wanted. That is evidence of discriminatory motive tied directly to the employment action in question. Here, Skou has not proffered such probative evidence.

Skou has submitted evidence of remarks made by various employees of Pacific as evidence of a discriminatory motive. There is no evidence that Canton, who decided to terminate Skou, ever made an age-related remark.

Skou also relies on remarks made by Babler. Babler asked Skou and other employees how old they were and how long they intended to work for Pacific. Skou, however,

---

**1.** At trial, the plaintiff must prove *both* of these elements. If the plaintiff persuades the jury that the defendant's reason is false, however, the jury could infer the ultimate fact of intentional discrimination, without additional proof, based on

this disbelief and the *prima facie* case. *Id.* at 918 n. 2 (citing *St. Mary's*, 509 U.S. at 511, 515). In a summary judgment motion, the nonmoving party, here the plaintiff, gets the benefit of all possible inferences.

admits that the questions were idle conversation. Babler referred to Skou and other thirty-year employees as old timers. But Skou also used this phrase and considered it a reference to a person's tenure rather than his or her age. These remarks are in the nature of "stray comments" which are not tied to the termination decision and, thus, are not probative of discriminatory animus. *See Nidds,* 113 F.3d at 918–19 (reference to "old timers" is ambiguous and is not tied directly to employment action); *Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir.1993) (" '[w]e don't necessarily like grey hair' " is more than a stray remark but is at best weak evidence of discriminatory animus, " '[w]e don't want unpromotable fifty-year olds around' " was very general and did not relate in any way to the terminations); *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1423 (9th Cir.1990) (reference to "old-boy network" is insufficient to create an inference of age discrimination); and *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990) (remark from decisionmaker that he chose a " 'bright, intelligent, knowledgeable young man' " is a stray remark which is insufficient alone to show discrimination). Babler's comments about "old dogs" are in the same vein.

The remarks by several employees concerning a person's days being numbered if they are over fifty were not made by either Babler or Canton. There is no evidence that any of the declarants had any influence over the decision to terminate Skou. Thus, those remarks are not probative of discriminatory motive.

Babler also allegedly stated to Landis that it was time to turn the Tacoma operation over to the younger kids. Although Babler denies making the statement, the court will assume that he did make it for purposes of this motion.

This statement is more probative of a discriminatory motive than the others relied upon by Skou. Accordingly, the court must determine if a statement made by Babler should be considered when determining whether the decision to terminate Skou, allegedly made by Canton, is discriminatory. Skou contends that Canton's close relationship with his father-in-law, Babler, and the fact that Canton was promoted by Babler to

president of Pacific a month after Canton terminated Skou, establishes an inference that Babler was involved in the termination decision so that any remarks made by Babler should be attributed to the decisionmaker. Canton's promotion to president of the company is a common occurrence in a family-run company such as Pacific. It is also reasonable that a month before Canton was promoted by Babler to the position of president, Canton had the authority to terminate Skou without consulting with Babler. The court concludes that the family relationship, without more, is insufficient to establish an inference that Babler was involved in the decision to terminate Skou. Consequently, Babler's statement is not probative of a discriminatory motive on the part of Canton.

The final evidence is that of the terminations of other people over forty years of age. Canton was only involved in one of those terminations, and the responsibilities of the terminated employee were combined with those of another employee. The evidence of the other ten terminations is that four of the ten persons terminated were either rehired or replaced with people older than the terminated employee. This evidence is insufficient to raise an issue of fact as to whether there was a discriminatory motive for the termination of Skou.

The court concludes that Skou has failed to produce sufficient evidence of pretext to survive Pacific's motion for summary judgment. Pacific's motion for summary judgment against the federal ADEA claim is granted.

3. *State Discrimination Claim*

The standard for establishing a *prima facie* case of discrimination under Oregon law is identical to that used in federal law. *Henderson v. Jantzen, Inc.,* 79 Or.App. 654, 657, 719 P.2d 1322 (expressly adopting formulation in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as test for ORS Chapter 659 actions), *rev. denied,* 302 Or. 35, 726 P.2d 934 (1986). The Oregon courts, however, have rejected the burden-shifting mechanism applicable to federal

claims. *See Henderson,* 79 Or.App. at 658, 719 P.2d 1322; *Callan v. Confederation of Or. Sch. Admins.,* 79 Or.App. 73, 717 P.2d 1252 (1986). A "plaintiff's *prima facie* case does not disappear merely because a defendant asserts a nondiscriminatory reason which may or may not persuade the trier of fact." *Henderson,* 79 Or.App. at 658, 719 P.2d 1322. The United States Court of Appeals for the Ninth Circuit has held that once a plaintiff establishes a *prima facie* case of discrimination, granting summary judgment to an employer on an Oregon age discrimination claim was inappropriate. *Messick v. Horizon Indus. Inc.,* 62 F.3d 1227, 1232 (9th Cir.1995).

Pacific has conceded the *prima facie* case for purposes of this motion. Thus, summary judgment against the state discrimination claim is denied.

### CONCLUSION

The defendant's motion for summary judgment (# 16) is granted in part and denied in part in that it is granted against the federal ADEA claim and denied against the state discrimination claim. The plaintiff's motion to strike and objections to evidence (# 34) is moot. The defendant's motion to strike plaintiff's corrected concise statement of facts (# 49) is moot. The plaintiff's second motion to strike and objections to evidence (# 55) is moot.

Because the court has dismissed all claims over which it has original jurisdiction, the remainder of this action is dismissed pursuant to 28 U.S.C. § 1367(c)(3).