NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WEBZERO, LLC,**

*Plaintiff-Appellant,*

**v.**

**CLICVU, INC.,**

*Defendant-Appellee.*

---

2009-1483

---

Appeal from the United States District Court for the Central District of California in case No. 08-CV-0504, Judge Mariana R. Pfaelzer.

---

Decided: August 3, 2010

---

HARRY W.R. CHAMBERLAIN II, Buchalter Nemer, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were SHANNON KEAST, and ROBERT M. DATO, of Irvine, California.

MARC JONAS BLOCK, Kucker & Bruh, LLP, of New York, New York argued for defendant-appellee.

---

Before BRYSON, SCHALL, and GAJARSA, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Plaintiff WebZero, LLC, appeals from an order granting summary judgment that defendant ClicVU, Inc., did not infringe WebZero's U.S. Patent No. 6,973,481 ("the '481 patent"). WebZero also challenges the dismissal of its unfair competition claim brought under section 17200 of the California Business and Professions Code. We affirm.

I

The '481 patent is directed to a method and system for creating an email forwarding address during an Internet session in which a user is prompted to provide an email address. The purpose of the invention is to help users control unsolicited email ("spam") and to change email accounts easily. If a user does not wish to provide a personal email address when prompted to do so by a web page, the invention enables the user to create an email forwarding address that can be provided instead. Email from the entity affiliated with the prompting web page is received at the new email address and then redirected to the user's personal, or "target," email address. In the described embodiments, the address-creation process is initiated when the user activates a web control that generates an "email forwarding address request," which "includes the web page address (URL) of the web page" that prompted the user for information. Upon receipt of the request, the system, without further user interaction, creates an email forwarding address that is associated with that web page. The email forwarding address is also stored for future use with the same web page. If a user begins receiving spam through the email forwarding

address, the user can simply disable the new address without affecting the user's own target email address.

WebZero asserted independent claims 1, 11, 18, and 30 of the '481 patent, as well as a number of dependent claims. Representative claim 1 of the '481 patent is reproduced below:

> During an Internet session where a user is viewing a web page that includes a prompt for an email address, a method of creating and forwarding an email forwarding address to said user comprising the steps of:
>
> > creating and storing a unique email forwarding address for the user that is automatically associated with said web page, said email forwarding address being dedicated for use by an entity associated with said web page to enable said entity to send email messages to said user, email messages directed to said email forwarding address being re-directed to a target email address associated with said user; and
> >
> > sending said email forwarding address to said user to enable said user to use said email forwarding address to satisfy the email address prompt.

Addressing several of the disputed claim terms used in claim 1 as well as other claims, the district court construed "web page" to mean "a single web page, which may be part of a larger body known as a 'website'"; it construed "dedicated for use" to mean "solely and exclusively for use"; it construed "unique email forwarding address" to

mean "unique forwarding address only for this particular user"; and it construed "automatically associated with" to mean associated "without any additional user input or interaction." Based on the court's construction of those four terms, ClicVU moved for summary judgment of noninfringement, asserting that its accused product did not meet any of the disputed limitations as construed by the trial court.

ClicVU's accused product, the SPAMEX disposable email service, is a web-based system that creates email forwarding addresses in response to user requests. When a user on the Internet is prompted by a web page to provide an email address, the user may request an email forwarding address by launching the SPAMEX program and clicking the "Create Address" button. The program then displays a window containing an "Address Style" field and a "Site Domain (optional)" field that is pre-populated with the domain name of the web page that prompted the user for information. For the "Address Style" field, the user is given the option to input a custom email forwarding address in place of the default "Random" email forwarding address. For the "Site Domain (optional)" field, the user is given the option to input additional domain names to be associated with the custom email forwarding address. After either exercising those options or declining to do so, the user clicks the "Submit" button, which causes the system to create an email forwarding address associated with the designated domain name or names.

The trial court held that ClicVU's SPAMEX system does not satisfy the "automatically associated with" and "dedicated for use" limitations in the claims of the '481 patent. *See WebZero, LLC v. ClicVU, Inc.*, No. CV-08-0504, slip op. at 6-9 (C.D. Cal. May 1, 2009). Specifically,

in light of its construction of the phrase "automatically associated with" to preclude "any additional user input or interaction," the court concluded that SPAMEX's "association can not be considered automatic, because the user must perform at least two actions": (1) clicking the "Create Address" button and verifying the contents of the fields; and (2) then clicking the "Submit" button. Moreover, the court ruled that SPAMEX does not create an email forwarding address that is "dedicated for use" by an entity, because a SPAMEX-generated address may be shared by multiple entities and thus is not, as the court's claim construction required, "solely and exclusively for use" by a single entity. The court declined to determine whether SPAMEX satisfied the "web page" limitation of the '481 patent. Based on its claim construction, the court held that the undisputed facts warranted judgment in ClicVU's favor.

The district court dismissed WebZero's unfair competition claim on the ground that "the Complaint offer[ed] only conclusory allegations . . . and lack[ed] any specificity or concrete facts" sufficient to meet the requisite pleading standard of "reasonable particularity." *WebZero, LLC v. ClicVU, Inc.*, No. CV-08-0504, slip op. at 9 (C.D. Cal. Apr. 4, 2008). Although the court granted WebZero's request for "leave to amend the Complaint to adequately support the Second Count," WebZero never amended the complaint. *Id.* WebZero now appeals from the judgment as to both claims.

II

With respect to summary judgment of noninfringement, we agree with the district court that ClicVU's product does not infringe the '481 patent as a matter of law, although our analysis differs in some respects from

that of the district court. The district court ruled that the SPAMEX system does not infringe either the "automatically associated with" limitation or the "dedicated for use" limitation. As to the first, the court found that because the SPAMEX system uses a two-step process (first clicking on "Create Address" and then, after reviewing the options presented, clicking on "Submit"), it cannot be considered "automatic" as that term is used in the patent. We believe there is force to WebZero's argument that SPAMEX's association of the new email address with the designated domain name is "automatic," even though the user is given the option to input a custom email address and even though the user is required to click a second button in order to confirm the selected options. We therefore do not rest our affirmance of the district court's summary judgment on that ground.

Instead, we sustain the district court's decision based on the second ground cited by the district court in support of its summary judgment order—that the SPAMEX system does not satisfy the "dedicated for use" limitation because the forwarding addresses generated by the SPAMEX system can be associated with more than one web domain and therefore are not "solely and exclusively for use" by a single entity. As the district court explained, the phrase "dedicated for use" is an attribute of the email forwarding address and not a step in the claimed method. Thus, an email forwarding address that can be shared, i.e., associated with more than one web domain, does not meet that limitation. The court noted that the "dedicated for use" limitation was added to the claims during prosecution to overcome a prior art reference (the Kennedy patent) that, as the applicants described it, disclosed "a system and method for populating forms with previously used data values." The applicants stated that "Kennedy in no way teaches or suggests creating a unique email

forwarding address for the user that is automatically associated with the web page, with the email forwarding address being dedicated for use by an entity associated with the web page." They added, "No unique email forwarding address is created by Kennedy in response to a web page email address prompt which results in email being re-directed. Rather, a saved email address is simply re-used whenever an email address prompt is received."

As explained by the district court, ClicVU's undisputed evidence showed that the SPAMEX system enables a user to associate a single email forwarding address with numerous domains, each of which may be sponsored by a different entity. Because the SPAMEX system does not dedicate each email address for use "solely and exclusively" by a single entity, the district court correctly concluded that SPAMEX does not satisfy the "dedicated for use" limitation of the '481 patent. Moreover, because the "dedicated for use" limitation was added during prosecution to overcome close prior art that did not have that feature, the district court correctly ruled that WebZero could not invoke the doctrine of equivalents as a theory of infringement.

While that reasoning disposes of WebZero's infringement claims under independent claims 1, 11, and 30 (and their dependent claims),[1] claim 18 presents a complica-

---

[1]    Independent claim 11, which is directed to a "system for creating and forwarding email forwarding addresses," is framed in the plural ("said email forwarding addresses being dedicated for use by entities associated with said web pages"), but it uses language that is directly parallel to that of the other independent claims. For that reason, we conclude that while the system of claim 11 may be employed to generate multiple "email

tion, because it lacks the clause "said email forwarding address being dedicated for use by an entity associated with said web page to enable said entity to send email messages to said user." In light of the statement in the prosecution history that "independent claim 49 [which issued as claim 18] incorporates the subject matter of claims 1, 8 and allowable claim 9," it appears that the omission of the quoted language may have been a scrivener's error. In any event, we conclude that it is appropriate to interpret claim 18 as similarly limited to a system that dedicates an email forwarding address for use by a single entity, for two reasons. First, the requirement in claim 18 (as well as in the other independent claims) that the method create and store "a unique email forwarding address for the user that is automatically associated with said web page" can fairly be read to require that the claimed method and system associate a single, unique forwarding address with each new web page that calls for an email address. Because each forwarding address is created for use with only a single web page, it follows that each such address is created for use by only the single entity affiliated with that web page. Second, any ambiguity in the text of that limitation is resolved by reference to the prosecution history, which makes clear that claim 18 was included among the claims distinguished from the Kennedy reference, and that it was distinguished on the same ground as the other independent claims. We therefore uphold the district court's summary judgment of noninfringement.

---

forwarding addresses," each of those addresses must be "dedicated for use" (i.e., solely and exclusively for use) by the single entity associated with the single web page that prompted that user for information. That interpretation of claim 11 is consistent with the other independent and dependent claims, as well as the written description.

III

Because we hold that ClicVU's SPAMEX system does not infringe the '481 patent as a matter of law, we also affirm the district court's dismissal of WebZero's state law unfair competition claim.  WebZero's unfair competition claim was predicated on its claim for patent infringement and thus rises or falls with the success of its infringement claim.  As such, our holding that summary judgment of noninfringement is warranted necessarily bars WebZero's unfair competition claims.

Moreover, we agree with the district court that Web-Zero's allegations of unfair competition were not pleaded with the requisite "reasonable particularity" required by relevant California law.  *See, e.g.*, *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1052-53 (N.D. Cal. 2004).  WebZero failed to set forth the particular conduct that ClicVU engaged in, or whether such conduct was "unlawful," "unfair," or "fraudulent" under California Business and Professions Code § 17200 et seq.  While WebZero was given an opportunity to amend its complaint, it declined to do so.  Because WebZero has failed to allege its state law claims with reasonable particularity, despite being afforded a chance to correct the deficiency, the district court properly dismissed that claim.

IV

Finally, we reject WebZero's argument that we must vacate the district court's summary judgment ruling under Rule 56(f) of the Federal Rules of Civil Procedure. Rule 56(f) provides that a court may order a continuance of discovery if a party opposing summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  WebZero

asserts that "[t]he scheduling of early summary judgment motions . . . along with ClicVU's failure to satisfy its discovery obligations, deprived WebZero of the opportunity to present facts essential to its opposition to ClicVU's motion for summary judgment." As ClicVU points out, however, WebZero failed to file a timely motion for continuance of discovery and failed to identify specific reasons why discovery should have been continued.

Under Ninth Circuit precedent, which governs this issue, a Rule 56(f) motion must be filed before the hearing on summary judgment. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990). Mere "[r]eferences in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Instead, a proper Rule 56(f) motion "requires affidavits setting forth the particular facts expected from the movant's discovery." *Id.*

WebZero never formally moved for a continuance of discovery under Rule 56(f). Instead, WebZero merely referenced Rule 56(f) in a footnote in its cross motion for summary judgment, in a paragraph of an declaration attached to that motion, and in its subsequent motion to alter or amend the summary judgment order. The references in the summary judgment motion (stating only that summary judgment would be "premature") and the declaration (stating only the "belief" that discovery "will enable WebZero to demonstrate genuine issues of fact") were insufficient to constitute a Rule 56(f) motion under Ninth Circuit law. The references in the motion to alter or amend the summary judgment order were untimely.

Moreover, the Ninth Circuit has held that under Rule 56(f) "[t]he burden is on the party seeking additional

discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001), citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). Here, WebZero's submissions to the district court did not describe the particular evidence that WebZero expected to obtain from further discovery or how that evidence would preclude summary judgment. As we have noted before, a party seeking further discovery under Rule 56(f) is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment. It is not enough simply to assert, à la Wilkins Micawber, that 'something will turn up.'" *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996). Accordingly, we hold that the district court did not abuse its discretion in failing to order additional discovery.

**AFFIRMED**