**Mary LOBSTER, Plaintiff,**

v.

**SIERRA PACIFIC POWER COMPANY, and Does 1 through 10, inclusive, Defendants.**

**No. CV–N–96–025–ECR.**

United States District Court, D. Nevada.

June 18, 1998.

*Dizol,* 133 F.3d at 1225 n. 5.

Anne M. Vohl, Julia C. Vohl, of Vohl & Vohl, Reno, NV, for Plaintiff.

Patrick Hicks, Neil M. Alexander, Reno, NV, for Defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Before the Court is Defendant's motion (# 22) for summary judgment in this employment discrimination case. Plaintiff has opposed (# 24) and Defendant has replied (# 26). For the reasons outlined below, we GRANT this motion.

## BACKGROUND

Plaintiff Mary Lobster began working for Defendant Sierra Pacific in 1988 as a temporary employee. She changed jobs and transferred between departments several times, and in 1994 she was assigned to do clerical work at Sierra Pacific's Pinon Pine construction project in Tracy, Nevada. Throughout this period of her employment, she alleges, she was periodically subjected to various forms of discrimination based on race and sex.

In August 1995 one of her co-workers, claiming that Ms. Lobster threatened her, called the Storey County Sheriff, and two deputies entered onto Sierra Pacific's proper-

ty and questioned Plaintiff. Plaintiff states that she had made no threat and that Sierra Pacific acted with racial and gender animus by permitting the deputies access to her at the workplace. About one month later Ms. Lobster filed an EEOC complaint, alleging race and sex discrimination and retaliation. In January 1996 she filed the present lawsuit and in February 1996 she went on medical leave.

After exhausting her medical benefits, she went on "Family and Medical Leave," and eventually received unemployment benefits while still technically employed by Sierra Pacific. When she was ready to return to work her job· had been eliminated, Sierra Pacific having completed the relevant portion of the Pinon Pine project, and the only job Sierra Pacific offered her in exchange was at a lower paygrade. She refused the replacement job; Sierra Pacific terminated her in January 1997; and she filed another EEOC charge. She later amended her complaint to add claims arising from the events of 1996 and 1997. Defendant has moved (# 22) for summary judgment, which motion is now ripe.

## DISCUSSION

### I. Summary Judgment Standard

■ The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture,* 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550–51 (9th Cir. 1989); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988); *see United States v. Dibble,* 429 F.2d 598, 603 (9th Cir.1970) (court may disregard inadmissible evidence sua sponte).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. As to materiality, only disputes over facts that might affect ·the outcome of the suit ·under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## II. ERISA

■ Plaintiff's Eighth Claim for Relief avers that Defendant terminated her in retaliation for seeking benefits under her employee benefit plan, in violation of 29 U.S.C. § 1140. This claim suffers from a number of defects, not the least of which is that Plaintiff admitted in her deposition that she has no evidence supporting it. Lobster Dep. at 580 (# 22, Ex. 4). Moreover, Plaintiff points to no proof that her medical insurance fell under ERISA, or that Sierra Pacific is a proper ERISA defendant. She does assert that after her termination Sierra Pacific failed to properly offer her "COBRA" coverage, but this is not evidence that she was fired in retaliation for seeking ERISA benefits. Lobster Aff. at ¶ 128(# 22). Summary judgment is appropriate on this claim.

## III. Family and Medical Leave Act

■ Plaintiff's Ninth Claim for Relief asserts a violation of 29 U.S.C. § 2601–54, the Family and Medical Leave Act of 1993, in that Defendant "den[ied] her appropriate employment at the end of her [medical] leave." Amended Compl. at 13(# 18). Plaintiff does offer evidence that the job Defendant offered her upon her return to work paid a lower salary, from which a reasonable juror could conclude that the two jobs were not "equivalent." 29 U.S.C. § 2614(a)(1)(B). However, Plaintiff does not even attempt to show that she is an "eligible employee" covered by the Act (29 U.S.C. § 2611(2)), or that she had a "serious health condition" entitling her to medical leave (29 U.S.C. § 2612(a)(1)(D)); in fact, she does not cite to any particular portion of the Act that Defendant allegedly violated. Summary judgment is appropriate on the Ninth Claim for Relief.

## IV. Americans With Disabilities Act

Plaintiff's Fifth and Sixth Claims for Relief allege violations of the Americans With Disabilities Act. Defendant argues that Ms. Lobster has not made out a prima facie case of disability discrimination. Mot. at 10(# 22). To prevail on a disability discrimination claim, Plaintiff must show 1) that she is disabled within the meaning of the ADA, 2) that she is qualified—that is, with or without accommodation she is able to perform the essential functions of the job at issue, and 3) that she suffered an adverse employment action because of her disability. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 271 (9th Cir.1996). Plaintiff bears the burden of showing that she is disabled and that she can perform the essential functions of the job with or without reasonable accommodation. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996). Although Plaintiff offers some evidence bearing on the first element, she makes no attempt at all to prove the second element. As she has not made out a prima facie case, summary judgment is appropriate.

## V. Retaliation

■ Plaintiff's Fourth Claim for Relief avers that Sierra Pacific "retaliated against Plaintiff for complaining to top management about race discrimination, and for filing her E.E.O.C. charge." Amended Compl. at 10(# 18). A plaintiff makes out a prima facie case of retaliation if she shows: 1) she was engaged in an activity protected by Title VII or Section 1981, 2) she was subjected to an adverse employment action, and 3) the timing creates an inference of causation. *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir.1997); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Plaintiff makes no explicit effort to fit the facts to the law but we have independently reviewed the evidence in the record. There is no evidence she suffered any adverse employment action as a result of complaints to her supervisors. As for the EEOC charge, Plaintiff asserts that "the Company sought to isolate me increasingly from other employees, and took away my telephone" as a result of the charge. Lobster Aff. at ¶ 79(# 24). Plaintiff does not indicate how she was isolated from other employees, when she was so isolated, when her telephone was removed, whether other employees had their telephones removed, or any other details surrounding this assertion.

The evidence is too conclusory; Plaintiff has not made out a prima facie case of retaliation. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (conclusory allegations in

an affidavit insufficient to defeat summary judgment motion) Furthermore, there is no evidence Plaintiff complained about any form of discrimination after the filing of her original Complaint, nor is the nexus between her September 1995 EEOC charge or lawsuit, on the one hand, and her January 1997 termination, on the other hand, close enough for a reasonable juror to find that she was terminated in retaliation for complaining or taking legal or administrative action. This claim fails.

## VI. Remaining Claims—Race and Gender Discrimination

We are left with Plaintiff's First and Second Claims for Relief, alleging disparate treatment based on race and gender, Third Claim for Relief, alleging a race-based and gender-based hostile work environment, and Seventh Claim for Relief, alleging race discrimination in violation of 42 U.S.C. § 1981. Amended Compl. at 8–13(# 18). Defendant argues that as to many of the alleged violations Plaintiff's administrative charge came too late, and therefore the statute of limitations has run. This is of course only true as to the Title VII claims. *Mitchell v. Keith,* 752 F.2d 385, 392 (9th Cir.1985) (no administrative exhaustion needed for Section 1981 claim). We assume, as Plaintiff urges, that the "continuing violations" doctrine waives the 180–day limitations period. The continuing violations doctrine permits a plaintiff to avoid the administrative exhaustion time limits under certain circumstances; in particular, if the doctrine applies then an action is always timely if filed by a present employee. *Gutowsky v. County of Placer,* 108 F.3d 256, 259 (9th Cir.1997). Given our assumption, since Plaintiff was employed by Sierra Pacific at the time she filed her EEOC charge, the charge was timely as to all alleged violations. Moreover, because the present lawsuit was filed before her termination, Plaintiff need not file another EEOC charge to be entitled to judicial relief on discrimination occurring after filing her first charge. *See Greenlaw v. Garrett,* 59 F.3d 994, 1000 (9th Cir.1995) (exhaustion not required as to post-charge conduct "like or reasonably related to" charged conduct).

We next hold that as a general matter the statistical evidence Plaintiff offers (# 24, Ex. A), which appears to be raw employment numbers for Sierra Pacific, broken down into various equal opportunity categories, is without probative value. Plaintiff makes no effort to demonstrate how this data proves the existence of intentional discrimination: we do not know how many women or African–Americans live in the Reno area, how many applied for jobs at Sierra Pacific, how many were hired, how many were fired, or any other "surrounding facts and circumstances." *Sengupta v. Morrison–Knudsen Co.,* 804 F.2d 1072, 1075–76 (9th Cir.1986) (citing *Int'l Brotherhood of Teamsters v. U.S.,* 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)); *Shutt v. Sandoz Crop Protection Corp.,* 944 F.2d 1431, 1433–34 (9th Cir.1991). Nor is Lonnie Feemster's affidavit sufficiently specific to draw any conclusions from the data. Feemster Aff. at ¶ 4(# 24). In short, Plaintiff's statistical evidence is of no moment.

### A. Gender Discrimination

Although Plaintiff asserts that the race and gender discrimination she allegedly suffered are "intertwined," we have scoured the record for evidence of gender discrimination and conclude that there is not enough to survive summary judgment. Opp'n at 19(# 24). The evidence consists of:

1. Sierra Pacific "used its discretion to promote men over women." Lobster Aff. at ¶ 35

2. The EEOC oversaw Sierra Pacific's compliance with Labor Department affirmative action guidelines regarding employment of women in construction projects. June 30, 1995 Letter (# 24, Ex. B).

3. Ronald Tillotson, Sierra Pacific's "diversity coordinator," received little support for his efforts from upper management. Tillotson Aff. (# 24).

Such evidence is too general and conclusory to support Plaintiff's gender-based disparate treatment and hostile work environment claims. *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177.

## B. Race Discrimination

### 1. The Evidence

We are thus left with Plaintiff's claims of race discrimination: disparate treatment in conditions of employment, discriminatory discharge, and hostile work environment, under Title VII and 42 U.S.C. § 1981. We first set forth the evidence in the record which colorably supports these claims:

1. At some unspecified time around 1990 Caucasians were trained in SAS, a computer programming language, but Plaintiff was not. Lobster Aff. at § 11(# 24).

2. In 1988 a Caucasian co-worker's job was reclassified, resulting in a pay raise, while Plaintiff's job (and that of another African–American co-worker, one Odessa Mack) was not, even though Plaintiff "was doing an outstanding job." *Id.* at 15–17.

3. Ms. Mack repeatedly accused Plaintiff of sabotaging her work, and Plaintiff complained about Ms. Mack's complaints; without investigating the circumstances, Plaintiff's supervisors advised her to transfer out of the union. *Id.* at 18–23. Plaintiff speculates that if she were Caucasian Sierra Pacific would have stopped Ms. Mack's harassment. *Id.*

4. Plaintiff took a non-union job in 1990, which resulted in steady pay increases but steadily decreasing responsibilities. *Id.* at 24–31. Plaintiff speculates that Sierra Pacific encouraged her to leave the union to 1) take her off the union pay scale (despite the pay increases) and to 2) make it easier to move her to departments lacking in African–Americans, so as to appease the EEOC. *Id.* Plaintiff nonetheless made less than Caucasians of the same status at all times after leaving the union. *Id.* at 129.

5. Apparently in 1990 Plaintiff "began to experience racial remarks and other forms of discrimination in the workplace." *Id.* at 31.

6. Sierra Pacific "promote[s] Caucasians over African Americans." *Id.* at 35.

7. Plaintiff complained about race discrimination, was denied a pay raise in 1993, was thereafter placed in the "Problem Resolution Program," apparently after complaining about the pay raise, and ultimately her Problem Resolution Program grievance was denied. *Id.* at 36–47. Plaintiff speculates that use of the Problem Resolution Program resulted in her being labelled a troublemaker, and that Sierra Pacific did not follow the Program's procedures. *Id.*

8. Plaintiff was then assigned to the Telecommunications Department, where her supervisor criticized her constantly. *Id.* at 48–52.

9. Plaintiff was then assigned, some time in 1994, to Sierra Pacific's Pinon Pine construction project, where her job duties were menial, working conditions were poor, and she was the only "minority person" working there. *Id.* at 53–59.

10. While working at Pinon Pine Plaintiff read mail regarding the EEOC's oversight of Sierra Pacific's "diversity compliance." *Id.* at 59.

11. A Caucasian subordinate, Sandi Martin, refused to take orders from Plaintiff and used unspecified derogatory racial remarks in her presence. *Id.* at 61–62. Plaintiff complained to her supervisor, but does not know what the supervisor did about it; in any event the remarks continued. *Id.* at 63. Plaintiff speculates that her race is the explanation for the subordinate's behavior and for management's failure to support Plaintiff. *Id.* at 61, 70.

12. Sierra Pacific paid for Caucasian employees' university courses, but refused to do so for Plaintiff for certain fall 1992 courses. *Id.* at 67. She speculates that the denial was racially motivated. Lobster Dep. at 230–31 (# 22, Ex. 4).

13. Plaintiff was required, from 1993 to 1996, to take orders from Caucasian workers who were not her supervisors and were at the same "level" as Plaintiff. Lobster Aff. at 71(# 24).

14. In August 1995 Sandi Martin falsely accused Plaintiff of threatening her, sheriff's deputies questioned Plaintiff at work, and Sierra Pacific suspended her. *Id.* at 72–75. Plaintiff speculates that Sierra Pacific did not in good faith believe that Plaintiff had made any threats. *Id.* at 75.

15. Plaintiff went on medical leave in February 1996, and Sierra Pacific replaced her with a Caucasian. *Id.* at 92.

16. By the time she was ready to return to Sierra Pacific, Plaintiff's job had been eliminated and she was offered a "low level clerical position at Level 3, [with] a lump sum to make up the difference [in salary]." *Id.* at 117, 123. This was a degrading demotion. *Id.* at 122.

17. In 1988, Plaintiff was refused service in a restaurant while travelling on business for Sierra Pacific. Mot. at 7(# 22). Plaintiff speculates that the refusal was racially motivated. *Id.*

18. Plaintiff was rated below expectations in her annual performance review in July 1991. Mot. at 8(# 22).

19. Plaintiff was denied a promotion in 1992 or 1993. Lobster Dep. at 213–14 (# 22, Ex. 4).

20. Plaintiff was denied training on an unspecified topic at an unspecified time. *Id.* at 218.

21. Plaintiff was overpaid at Sierra Pacific. *Id.* at 314.

### 2. Hostile Work Environment

We assume for the moment that the "continuing violations" doctrine applies to Plaintiff's hostile work environment claim. We further assume that such a claim is cognizable under 42 U.S.C. § 1981.

■■■ Proof that the workplace environment is actionably hostile has two components: it must be objectively hostile as measured from the perspective of a reasonable person with the same fundamental characteristics as the plaintiff, and the plaintiff must sincerely, though subjectively, perceive it as hostile. *Fuller v. City of Oakland, California,* 47 F.3d 1522, 1527 (9th Cir.1995). Hostility is measured based on the totality of the circumstances; occasional annoying or "merely offensive" comments do not constitute harassment, but legal protection comes into play before the harassing conduct leads to a "nervous breakdown." *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9th Cir.1994). Under this standard, Plaintiff's conclusory and non-specific evidence is inadequate—because we do not know what racially derogatory remarks were actually made (see items (5) and (11) above), we are unable to determine if the "objective" prong is satisfied. It is possible that the working conditions mentioned in item (9) above were objectively hostile, but we cannot tell from Plaintiff's affidavit and in any event we have no reason to believe that the conditions were hostile to African–Americans and not to others. Item (14), the trigger for Plaintiff's first EEOC charge, does not appear to have anything to do with race; granted, Sandi Martin may have been motivated by racial animus, but this does not prove that Sierra Pacific was. Finally, although there is corroboration for Plaintiff's assertions that she heard racially offensive comments, the corroboration is itself too conclusory and non-specific to meet the first prong of the hostile work environment test. Feemster Aff. at 9(# 24); Mosely Aff. at 10(# 24); *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177.

### 3. Discriminatory Discharge

■■■ Section 1981 claims are analyzed under the same burden-shifting framework as Title VII claims. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Sengupta,* 804 F.2d at 1074. We assume that Section 1981 reaches all conduct prohibited by Title VII, as the Supreme Court has suggested. *Rivers v. Roadway Express,* 511 U.S. 298, 303, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); *see Schwapp v. Town of Avon,* 118 F.3d 106, 112 (2d Cir.1997) (same).

■■■ Plaintiff makes out a prima facie case of discriminatory discharge if she shows she was: (1) a member of a protected class, (2) performing her job in a satisfactory manner, (3) discharged, and (4) replaced by an employee outside her protected class with equal or inferior qualifications. *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 917 (9th Cir.1996). However, because Plaintiff was in effect laid off, rather than simply fired, the fourth element need not be strictly satisfied. *Id.* When a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate reason for its employment decision. *Payne v. Norwest Corp.,* 113 F.3d 1079, 1080 (9th Cir.1997). Once the defendant responds to the plaintiff's prima facie case, the plaintiff must demonstrate that the employer's stated reason is merely a pretext. *Id.* "It is not

enough ... to disbelieve the employer;" if there are no genuinely disputed *facts* material to the issue of the employer's discriminatory intent, then "disbelief of the reasons put forward by the defendant" is impossible and summary judgment for the employer is appropriate. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis omitted). A plaintiff must produce "specific, substantial evidence of pretext" and may "no longer rely on his prima facie case." *Payne,* 113 F.3d at 1080. In particular, a plaintiff must produce enough evidence to allow a reasonable factfinder to conclude either 1) that the employer's explanation is false, or 2) that the true reason for the employment action was a discriminatory one. *Nidds,* 113 F.3d at 918 n. 2.

■ It appears Plaintiff has made out a prima facie case, and Sierra Pacific asserts a legitimate reason for the elimination of her job—the Pinon Pine project was complete. Accordingly, Plaintiff must produce evidence that Sierra Pacific's explanation of her termination is false or that the true explanation is race discrimination. This she has failed to do. Indeed, it appears from her affidavit that instead of race discrimination she asserts 1) disability discrimination and 2) retaliation for seeking ERISA benefits as the true reasons for her termination. In any event there is no evidence of pretext in the record. To the contrary, Plaintiff admits that when she was ready to return to work she was offered a new job, albeit a lower paying one. This is insufficient to survive summary judgment.

### 4. Terms and Conditions of Employment

Without identifying those terms and conditions of employment as to which she claims disparate treatment, or distinguishing between Title VII and Section 1981, Plaintiff asserts that she was treated disparately. Amended Compl. at 8–12(# 18). Omitting those assertions which are conclusory, speculative, or do not pertain to any adverse employment action, *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177, it appears that four of the above-listed items form the basis of this claim:

(1) Plaintiff was not trained in SAS.

(2) Plaintiff was denied a pay raise in 1988.

(7) Plaintiff was denied a pay raise in 1993.

(12) Plaintiff's college courses were not reimbursed.

As to these four items Plaintiff's affidavit provides some factual basis for believing that race factored into Sierra Pacific's decision making.

We have assumed so far that the 21 items listed above meet the "continuing violations" standard; we now face it head-on. Plaintiff must satisfy this doctrine to prevail under either Title VII or Section 1981, since the the most recent adverse employment actions, the 1993 pay raise denial and the 1992 course non-reimbursement, occurred more than two years before the filing of the original Complaint; that is, the statute of limitations ran before filing the original Complaint. *Goodman v. Lukens Steel,* 482 U.S. 656, 661–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (statute of limitations for Section 1981 is state personal injury statute of limitations).

■ A present employee, as Plaintiff was at the time she filed her Complaint, may invoke the continuing violations doctrine by showing a series of related discriminatory acts, or a policy or practice of systematic discrimination. *Gutowsky,* 108 F.3d at 259. Even considering evidence in the record other than the four items above, such as Sandi Martin's racially hostile language, we think no reasonable juror could find a policy or practice of systematic discrimination. As for "a series of related discriminatory acts," *Green v. Los Angeles Cty. Sup't of Schools,* 883 F.2d 1472, 1480 (9th Cir.1989) provides guidance. *Green* reveals that if separate instances of discrimination are of a "separate form"—e.g., harassment versus discriminatory discharge, or failure to train versus dissemination of poor references—then they are not related. *Id.* at 1481. In Plaintiff's case, she alleges one instance of failure to train, one instance of failure to reimburse for college courses, and two instances (separated by five years) of denial of a pay raise.

Taken together, no reasonable juror could find from this evidence such a series of related discriminatory acts. True, the two pay raise denials are "related," but they occurred too far apart in time to be considered part of

a "series." Moreover, to the extent Plaintiff seeks relief for discriminatory terms and conditions of employment under 42 U.S.C. § 1981, the 1988 pay raise denial and the denial of SAS training are not cognizable because they occurred before the 1991 amendments to Section 1981. *Rivers*, 511 U.S. at 303, 114 S.Ct. 1510. Consequently, only the 1992 reimbursement denial and the 1993 pay raise denial support invocation of the continuing violations doctrine under Section 1981, and these two items together are inadequate. In sum, Plaintiff filed her original Complaint more than two years after allegedly experiencing the discriminatory terms and conditions of employment listed above, and she is therefore not entitled to relief.

### CONCLUSION

Plaintiff has offered insufficient evidence to make out a prima facie case for any form of discrimination except disparate treatment on the basis of race. As to that claim, she has offered no evidence of pretext on her discriminatory discharge claim, and her remaining disparate treatment claims occurred beyond the limitations period. Summary judgment for the defense is therefore in order.

***IT IS, THEREFORE, HEREBY OR-DERED*** that Defendant's motion (# 22) for summary judgment is ***GRANTED.*** The Clerk shall enter judgment accordingly.